JEFFER MANGELS BUTLER & MITCHELL LLP
BENJAMIN M. REZNIK (Bar No. 72364)
*breznik@jmbm.com*
MATTHEW D. HINKS (Bar No. 200750)
*mhinks@jmbm.com*
KATHRYN A. ESHBAUGH (Bar No. 299944)
*keshbaugh@jmbm.com*
LARA R LEITNER (Bar No. 303162)
*lleitner@jmbm.com*
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
Telephone:   (310) 203-8080
Facsimile:    (310) 203-0567

Attorneys for Plaintiff SULLIVAN
EQUITY PARTNERS, LLC

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SULLIVAN EQUITY PARTNERS, LLC, a Delaware limited liability company,, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF LOS ANGELES, a Charter City, and DOES 1 through 50, inclusive,, <br><br> Defendants. | Case No. 2:16-cv-07148-CAS-AGR <br><br> **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS** <br><br> Date:       January 9, 2016 <br> Time:      10:00 a.m. <br> Crtrm.:   8D <br><br> The Honorable Christina A. Snyder <br><br> Trial Date:          Not set |

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ........................................................................................ 1

II.  ALLEGATIONS OF COMPLAINT ........................................................... 2

    A.   Plaintiff Plans to Develop the Property ................................................ 2

    B.   Department of Public Works................................................................. 2

    C.   The Tree Removal Ordinance .............................................................. 3

    D.   The Tree Permit and Accidental Removal of Trees 5, 29 and 30.......... 3

    E.   Public Outcry Over the Tree Removal ................................................. 3

    F.   Discovery of the Accidental Removals ................................................ 4

    G.   Sham City Hearings............................................................................. 5

III. ARGUMENT .............................................................................................. 6

    A.   Standard of Review.............................................................................. 6

    B.   The City's Quibbles with the Complaint's Allegations Lack Merit ....... 6

    C.   The Complaint Alleges a Valid and Well-Supported Due Process
        Claim ................................................................................................... 7

        1.   A Procedural Due Process Claim Based On Bias Is Far
             Broader than the City Asserts ...................................................... 7

        2.   The Complaint Pleads Sufficient Facts Of Actual Bias To
             Survive Defendant's Motion To Dismiss.................................... 10

        3.   The Complaint Alleges Sufficient Facts Establishing Pre-
             Commitment on the Part of James and Lorenzen .................... 11

        4.   The Complaint Alleges Sufficient Facts Establishing
             Personal Embroilment on the Part of James and Lorenzen ....... 13

        5.   The Complaint Pleads Sufficient Facts Establishing that
             Lorenzen and James' Conflicting Roles as Investigator,
             Prosecutor and Judge Created a Forbidden Risk of Bias .......... 14

        6.   Plaintiff Pled Sufficient Facts To Demonstrate That

JMBM | Jeffer Mangels
Butler & Mitchell LLP

**TABLE OF CONTENTS**
**(cont'd.)**

Page

Institutional Bias Created Such A High Risk Of Actual Bias To Amount To A Due Process Violation.......................... 16

D.    The Complaint Alleges Sufficient Facts Supporting A Substantive Due Process Claim........................................... 16

E.    Plaintiff Has Properly Alleged a Claim Under the Excessive Fines Clause...................................................................... 19

F.    Plaintiff Has Properly Alleged Facts Supporting A Denial Of Equal Protection................................................................. 20

G.    The Complaint Alleges a Valid Mandamus Claim ............................ 22

H.    The Complaint Alleges a Valid Declaratory Relief Claim.................. 24

IV.    CONCLUSION .............................................. 25

JMBM | Jeffer Mangels Butler & Mitchell LLP

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*AlliedSignal, Inc. v. City of Phoenix*,
   182 F.3d 692 (9th Cir. 1999) ............................................................................7

*Alpha Epsilon Phi Tau Chapter Housing Ass'n v. City of Berkeley*,
   114 F. 3d 840 (9th Cir. 1997) ..........................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................6, 7, 14

*Audette v. Int'l Longshoremen's and Warehousemen's Union*,
   195 F.3d 1107 (9th Cir. 1999) .......................................................................25

*Austin v. United States*,
   509 U.S. 602 (1993) ........................................................................................19

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) ......................................................................6, 8

*Bell Atl. Corp. v. Twombley*,
   550 U.S. 544 (2007) .........................................................................................6

*Bixby v. Pierno*,
   4 Cal. 3d 130 (1971) ......................................................................................23

*Breakzone Billiards v. City of Torrance*,
   81 Cal. App. 4th 1205 (2000) ..............................................................15, 23

*Building 11 Investors LLC v. City of Seattle*,
   912 F. Supp. 2d 972 (W.D. Wash. 2012) .....................................................21

*Cadiz Land Co. v. Rail Cycle, L.P.*,
   83 Cal. App. 4th 74 (2000) ............................................................................23

*California ex rel. RoNo, LLC v. Altus Fin. S.A.*,
   344 F.3d 920 (9th Cir. 2003) ...........................................................................7

*Caperton v. A.T. Massey Coal Co.*,
   556 U.S. 868 (2009) .......................................................................................11

*Clark v. City of Hermosa Beach*,
   48 Cal. App. 4th 1152 (1996) ...............................................................22, 23

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(cont'd.)

Page(s)

*Crater v. Galaza,*
  491 F.3d 1119 (9th Cir. 2007)................................................................8

*Crown Point Development, Inc. v. City of Sun Valley,*
  506 F.3d 851 (9th Cir. 2007)................................................................17

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey,*
  920 F.2d 1496 (9th Cir. 1999)........................................................17, 22

*Engquist v. Oregon Dep't of Agr.,*
  553 U.S. 591 (2008)...........................................................................21

*Evans v. Dep't of Motor Vehicles,*
  21 Cal. App. 4th 958 (1994)................................................................23

*Exxon Corp. v. Heinze,*
  32 F.3d 1399 (9th Cir.1994)..................................................................8

*Goat Hill Tavern v. City of Costa Mesa,*
  6 Cal. App. 4th 1519 (1992)................................................................23

*Golden Day Schools, Inc. v. State Dept. of Education,*
  83 Cal. App. 4th 695 (2000)................................................................14

*Halverson v. Skagit Cty.,*
  42 F.3d 1257 (9th Cir. 1994)..........................................................17, 18

*Horne v. Dep't of Agric.,*
  133 S. Ct. 2053 (2013)........................................................................24

*Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n,*
  426 U.S. 482 (1976)...........................................................................15

*Hurles v. Ryan,*
  752 F.3d 768 (9th Cir. 2014)..................................................................8

*In re Complaint of Judicial Misconduct,*
  816 F.3d 1266 (9th Cir. 2016)..............................................................13

*In re Murchison,*
  349 U.S. 133 (1955)........................................................... 10, 12, 13, 14

Case No. 2:16-cv-07148-CAS-AGR

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(cont'd.)

Page(s)

*Kenneally v. Lungren*,
  967 F.2d 329 (9th Cir.1992)................................................................12

*Kim v. United States*,
  121 F.3d 1269 (9th Cir. 1997)....................................................19, 20

*Kleiner v. Garrison*,
  82 Cal. App. 2d 442 (1947)................................................................24

*Koontz v. St. Johns River Water Mgmt. Dist.*,
  133 S. Ct. 2586 (2013)........................................................................25

*Lazy Y Ranch, Ltd. v. Behrens*,
  546 F.3d 580 (9th Cir. 2008)..............................................................22

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001)........................................................7, 24

*Lockary v. Kayfetz*,
  917 F.2d 1150, 1155 (9th Cir. 1999)................................................22

*Mann v. Dep't of Motor Vehicles*,
  76 Cal. App. 4th 312 (1999)..............................................................23

*Mathews v. Eldridge*,
  424 U.S. 319 (1976)..............................................................................7

*Mayberry v. Pennsylvania*,
  400 U.S. 455 (1971)............................................................................11

*McIntyre v. Santa Barbara Cty. Employees' Retirement' Sys.*,
  91 Cal. App. 4th 730 (2001)..............................................................10

*Merrifield v. Lockyer*,
  547 F.3d 978 (9th Cir. 2008)......................................................17, 22

*Newdow v. Lefevre*,
  598 F.3d 638 (9th Cir. 2010)..............................................................6

*Nightlife Partners, Ltd. v. City of Beverly Hills*,
  108 Cal. App.4th 81 (2003)..............................................................15

JMBM | Jeffer Mangels
Butler & Mitchell LLP

**TABLE OF AUTHORITIES**
(cont'd.)

Page(s)

*Parks Sch. of Bus. v. Symington*,
   51 F.3d 1480 (9th Cir. 1995)..................................................................6

*Pennsylvania Coal Co. v. Mahon*,
   260 U.S. 393 (1922)............................................................................25

*PMI Mortg. Ins. Co. v. City of Pac. Grove*,
   128 Cal. App. 3d 724 (1981)...............................................................23

*Realty Experts Inc. v. RE Realty Experts, Inc.*, No. 11-CV-1546 JLS
   CAB, 2012 WL 699512 (S.D. Cal. Mar. 1, 2012) ..............................25

*Sinaloa Lake Owners Assoc. v. City of Simi Valley*,
   882 F.2d 1398 (9th Cir. 1989)......................................................18, 22

*Stivers v. Pierce*,
   71 F.3d 732 (9th Cir. 1995)...........................................................*passim*

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning
   Agency*,
   535 U.S. 302 (2002)............................................................................25

*Taylor v. Hayes*,
   418 U.S. 488 (1974)............................................................................13

*Tumey v. Ohio*,
   273 U.S. 510 (1927)............................................................................13

*U.S. v. $273,969.04 U.S. Currency*,
   164 F.3d 462 (9th Cir. 1999)..............................................................19

*U.S. v. Bajakajian*,
   524 U.S. 321 (1998)............................................................................19

*United States v. Berber-Tinoco*,
   510 F.3d 1083 (9th Cir. 2007)..............................................................8

*Village of Willowbrook v. Olech*,
   528 U.S. 562 (2000)............................................................................21

*White v. Ford Motor Co.*,
   312 F.3d 998 (9th Cir. 2002)..............................................................17

vi

**TABLE OF AUTHORITIES**
(cont'd.)

Page(s)

*Williams v. Pennsylvania*,
    136 S. Ct. 1899 (2016) .......................................................................................12

*Withrow v. Larkin*,
    421 U.S. 35 (1975)..........................................................................................8, 15

**STATUTES**

28 U.S.C. § 2201.....................................................................................................24

Cal. Civ. Proc Code
    § 1094.5 (b), (c) .............................................................................................22

LAMC
    § 46.00, *et seq.* ..........................................................................................18, 21
    § 46.06...................................................................................................*passim*

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) .........................................................6, 7, 17

Case No. 2:16-cv-07148-CAS-AGR

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

## I. **INTRODUCTION**

A fair trial in a fair tribunal is a basic requirement of due process. This principle is as true of administrative adjudication as it is of courts. Not only is a biased decisionmaker constitutionally unacceptable but the law prohibits even the appearance of bias in agency decisionmaking.

The claims pled in Plaintiff Sullivan Equity Partners, LLC's ("Plaintiff") Complaint revolve around a mistake committed by a contractor clearing trees on Plaintiff's property. Plaintiff had received from the City a permit to remove 56 trees; a contractor removed 55, including 3 that he had misidentified. Even before the mistake was discovered, a vocal project opposition group, well-heeled neighbors, local media, celebrities, and local, county, state and national politicians—incensed that the City would issue such a broad tree removal permit and eager to prevent the development of Plaintiff's two hillside lots—demanded answers and action. The City's year-long investigation into the matter was headed by the President of the Board of Public Works and the City's senior urban forestry official. Spurred on by the enormous political pressure brought to bear, the City's investigators planned a response and ultimately elected to commence administrative proceedings against Plaintiff under the City's Scorched Earth Ordinance, which allows the City to revoke outstanding building permits for a property and ban future development for up to a decade. The City then assigned the same two investigators, both of whom had preannounced that they were in favor of imposing Scorched Earth penalties, to preside over the two subsequent hearings supposedly designed to provide Plaintiff a fair tribunal to defend itself and its property rights. To nobody's surprise, at the conclusion of those hearings, the City revoked Plaintiff's vested building and grading permits and imposed a 5-year development ban.

Prior to the deprivation of its property interests, due process mandated that the City provide Plaintiff with a fair trial before an unbiased judge. What Plaintiff got instead was mob justice at the end of a pitchfork culminating in a staged show trial

JMBM | Jeffer Mangels | Butler & Mitchell LLP

before a kangaroo court where the outcome was pre-ordained.  The due process violations suffered by Plaintiff were egregious and they are obvious.

Defendant City of Los Angeles' Motion to Dismiss Plaintiff's well-supported Complaint lacks any merit whatsoever.  Unable to muster a serious argument in response to the extensive and detailed factual allegations, the City improperly resorts to extrinsic evidence from which it purports to draw adverse inferences in an entirely misguided attempt to "disprove" the allegations of the Complaint.  The City also relies upon inapposite case law from which it purports to divine holdings that do not exist.  As argued below, under any standard, the processes employed by the City here was constitutionally infirm.  Accordingly, Plaintiff respectfully submits that the City's motion should be denied.

## II.   ALLEGATIONS OF COMPLAINT

### A.   Plaintiff Plans to Develop the Property

Plaintiff owns two vacant lots in the Sullivan Canyon area of the City of Los Angeles, which together span 12 acres (the "Property").  [*See* Complaint ¶¶ 10-12.]  Plaintiff plans to develop single-family homes on each of the lots.  [Complaint ¶ 10.]  Sullivan Canyon is home to some of the most affluent and politically-connected residents of the City.  [Complaint ¶ 12.]  Partly as a result, development of the Property by Plaintiff's predecessors has generated significant controversy over many years.  [Complaint ¶ 13.]  Plaintiff secured numerous building and grading permits in 2014 to develop the Property (the "Permits").  [Complaint ¶ 14.]

### B.   Department of Public Works

The Department of Public Works (the "Department") is a City department responsible for City infrastructure and certain environmental programs.  [Complaint ¶ 15.]  Housed within the Department is the Bureau of Street Services, within which resides the City's Urban Forestry Division.  [*Id.*]  Kevin James is the current President of the Board of Public Works (the "Board") and presides over Board hearings.  [Complaint ¶ 16.]  Mr. James is also one of the Department's five member

executive team and oversees Street Services and Urban Forestry.  [*Id.*]

### C.  The Tree Removal Ordinance

The City regulates the removal and relocation of "protected trees" under the Los Angeles Municipal Code ("LAMC").  [Complaint ¶ 17.]  "Protected trees" are trees of particular species and size.  [*Id.*]  A tree permit issued by the Board is required to remove a protected tree.  [Complaint ¶ 18.]  Under the City's "Scorched Earth Ordinance," if a protected tree is removed without a permit, the City may revoke any building permit for which construction has not commenced and withhold issuance of any new building permit for the property for up to 10 years.  [Complaint ¶¶ 20-23.]  Prior to imposing penalties under the Scorched Earth Ordinance, the Bureau of Street Services must give notice and hold a hearing.  [Complaint ¶¶ 22-23.]  Decisions made by the Bureau are appealable to the Board.  [Complaint ¶ 24.]

### D.  The Tree Permit and Accidental Removal of Trees 5, 29 and 30

In 2012, Plaintiff obtained a tree permit from the Board to remove 56 of the 117 protected trees on the Property.  [Complaint ¶ 29-32.]  The permit was issued pursuant to recommendation from Ron Lorenzen, at the time the City's Assistant Chief Forester.  [Complaint ¶¶ 28, 30.]  The Board had previously issued to the prior Property owner a permit to remove 51 protected trees from the Property pursuant to another Lorenzen recommendation.  [Complaint ¶¶ 26-28.]  Ricardo Gonzalez and his crew were hired by the general contractor to remove the subject trees pursuant to the Board-approved tree permit.  [Complaint ¶ 34.]  Despite extensive controls implemented to mark the proper trees subject to removal, Gonzalez accidentally and unknowingly removed 3 trees not part of the tree permit.  [Complaint ¶ 37.]  In all, Gonzalez removed 55 protected trees.  [*Id.*]  Despite City inspections, Gonzalez' errors went unnoticed by anybody for over a year.  [Complaint ¶¶ 37-40.]

### E.  Public Outcry Over the Tree Removal

The public outcry over the tree removal was immediate and intense.  Within a day of the removals, and well before the accidental removals had been uncovered,

JMBM | Jeffer Mangels
Butler & Mitchell LLP

project opponents began contacting City elected officials demanding an investigation into whether the removals were permitted and an answer as to how the permits could be issued without notice to the community.  [Complaint ¶¶ 42-46, 48, 52.][1]  The story was picked up by local media.  [*Id.*]  Political pressure mounted upon Kevin James, as Department head, and Lorenzen, as the senior City forestry official, to act in response to the tree removals.  [*Id.*]  Complaints and demands for action were raised by celebrities, former State Senator Tom Hayden, Congressman Ted Lieu, County Supervisor Sheila Kuhl, Mayor Garcetti's office and the office of the local Councilman.  [Complaint ¶¶ 57-63.]  President James strategized with Lorenzen to deflect political heat and press attention away from his Department. [Complaint ¶¶ 46, 67-69.]  Lorenzen acted as the City's lead investigator into the matter and was supervised throughout by James.  [Complaint ¶¶ 70-87, 19, 100-01.]

### F.   Discovery of the Accidental Removals

The City conducted a further tree inspection in December 2015, 14 months after the removals.  [Complaint ¶¶ 70-74.]  James directed Lorenzen to conduct an inspection following a demand by an attorney for local project opponents.  [*Id.*] Lorenzen and James thereafter met and consulted on multiple occasions to strategize over a response to the accidental removals.  [Complaint ¶¶ 75-76, 78, 100-01.] Ultimately, they agreed that the City would institute proceedings under the Scorched Earth Ordinance.  [Complaint ¶¶ 82, 84, 87.]

Once the accidental removals became known, the political pressure to impose Scorched Earth penalties intensified.  [Complaint ¶¶ 70-87.]  During the investigation into the removals and strategy sessions, both Lorenzen and James assured City political officials that they concurred in the assessment that penalties should and would be imposed.  [Complaint ¶¶ 82, 84.]  Lorenzen, as the person who recommended approval of the permit, and James, as the head of the Department

---

[1] The City does not provide public notice of a tree permit.  [Complaint ¶ 52.]

Case No. 2:16-cv-07148-CAS-AGR

responsible for issuing it, were motivated to clear their names by assuring that the project opponents' quest to prevent the development of the Property was realized. [Complaint ¶¶ 91, 104-05, 110.]

### G.   Sham City Hearings

In December 2015, the City gave notice of its intent to hold a hearing before the Bureau of Street Services under the Scorched Earth Ordinance.   [Complaint ¶ 87.]   This was the first time Plaintiff learned of the Gonzalez errors.   [Complaint ¶ 39.]   Incredibly, the City assigned Ron Lorenzen to act as the hearing officer notwithstanding that Lorenzen was disqualified to act as a quasi-judicial official in the proceedings given, among other things, his involvement in issuing the subject permit, his role as the City's lead investigator into the matter and his expressed pre-commitment to invoking Scorched Earth penalties.   [Complaint ¶ 91.]   Nevertheless, Lorenzen conducted the hearing and subsequently issued a determination invoking the ordinance, revoking outstanding permits (even issued grading permits even though the ordinance allows only for the revocation of building permits), and imposing a 5-year development ban on the Property.   [Complaint ¶¶ 92-93.]

Plaintiff subsequently appealed Lorenzen's determination.   James presided over the Board hearing even though he was disqualified for reasons similar to Lorenzen.   [Complaint ¶ 101.]   In advance of the hearing, Lorenzen authored a staff report recommending denial of the appeal.   [Complaint ¶ 102.]   During the hearing, James spoke stridently in favor of Lorenzen's determination and railed that the City should make an example of Plaintiff.   [Complaint ¶ 104.]   James did not disclose the mountain of *ex parte* communications he had engaged in regarding the matter.   [*Id.*] The Board subsequently voted to deny Plaintiff's appeal following a motion made by James.   [Complaint ¶ 105.]

As a result of the sham City hearings, all of Plaintiff's building and grading permits have been revoked and the City has recorded a document against the Property reflecting its determination and forbidding the issuance of any new permits

for the Property for five years.  [Complaint ¶ 106.][2]

## III.   ARGUMENT

### A.   Standard of Review

A complaint survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief" and that the claim is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 547 (2007).  The court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the light most favorable to the nonmoving party."  *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal is appropriate only when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

### B.   The City's Quibbles with the Complaint's Allegations Lack Merit

A motion to dismiss is an inappropriate forum to attack a party's factual contentions.  *Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010).  Nonetheless, the City overlooks the pleading standards governing its motion and instead repeatedly attacks the veracity of Plaintiff's allegations.

For example, Defendant urges the Court to dismiss Plaintiff's procedural due process claim arguing that details of communications alleged in the complaint do not evidence prejudgment.  [Motion, p. 12:19-26; *see also id.* at 17:6-10 (purporting to disprove allegations of pre-judgment).]  Defendant misses the point of the allegations entirely and misconstrues the nature of a 12(b)(6) motion.  The Complaint alleges in clear terms that James and Lorenzen were biased against Plaintiff and prejudged the matter before sitting as quasi-judicial officers over City hearings.  The allegations of communications among City officials and others,

---

[2] Plaintiff does not oppose the City's challenge to the Slander of Title claim.

JMBM | Jeffer Mangels Butler & Mitchell LLP

Case No. 2:16-cv-07148-CAS-AGR

including Lorenzen and James, establishes that the allegations are plausible on their face.  Given that the Court must draw all inferences in favor of Plaintiff, Defendant's competing inferences may not be considered on a motion to dismiss.

Further, although Defendant is confined to the facts asserted in Plaintiff's Complaint, Defendant cites to and relies upon evidence extrinsic to the pleading. [*See, e.g.*, Motion, pp. 13:9-13; 24:23-28.]  This is improper.  *Ashcroft*, 556 U.S. at 674 (Court confined to four corners of the complaint); *see also AlliedSignal, Inc. v. City of Phoenix*, 182 F.3d 692, 695 (9th Cir. 1999).  Factual contentions extrinsic to Plaintiff's complaint have no place in a Rule 12 pleading motion.  For example, when a court judicially notices a document, the court merely confirms the existence of the document, not the truth of the facts asserted therein, which is what the City asks the Court to do.  *California ex rel. RoNo, LLC v. Altus Fin. S.A.*, 344 F.3d 920, 931 (9th Cir. 2003) ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein"); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).  Defendant's motion should be denied outright given the procedural irregularities.

## C.  The Complaint Alleges a Valid and Well-Supported Due Process Claim

### 1.  *A Procedural Due Process Claim Based On Bias Is Far Broader than the City Asserts*

The City impermissibly restricts a procedural due process analysis to two categories of prejudice: (1) "direct, personal, substantial pecuniary interests in the proceedings"; and (2) institutional bias.  [Motion, p. 13:20-25.]  However, the case the City relies upon involves only a claim of "structural bias" and even then makes clear that there are more than just "two main categories of [structural bias] due process challenges."  *Alpha Epsilon Phi Tau Chapter Housing Ass'n v. City of Berkeley,* 114 F. 3d 840, 844 (9th Cir. 1997); *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances" but rather is "flexible and calls for such

JMBM | Jeffer Mangels Butler & Mitchell LLP

procedural protections as the situation demands") (citations omitted); *Withrow v. Larkin*, 421 U.S. 35, 52 (1975) ("The incredible variety of administrative mechanisms in this country will not yield to any single organizing principle.").

Recognizing this, the Ninth Circuit employs flexible factors in evaluating a bias claim and eschews a categorical approach. *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995). According to *Stivers*, "there are two ways in which a plaintiff may establish that he has been denied his constitutional right to a fair hearing before an impartial tribunal": through evidence establishing actual bias on the part of the adjudicator or evidence showing a personal or pecuniary interest in the outcome of a proceeding creating the appearance of partiality. *See id.* Moreover, "the two categories of bias claims are not hermetically sealed." *Id.; see also Hurles v. Ryan*, 752 F.3d 768, 789 (9th Cir. 2014) ("risk of unfairness has no mechanical or static definition" and "cannot be defined with precision" because "[c]ircumstances and relationships must be considered" (citing *In re Murchison,* 349 U.S. 133, 136 (1955)); *Withrow*, 421 U.S.at 52 (evidence of actual bias or prejudgment or the risk of bias or prejudgment may amount to a due process violation). The appearance of bias or probability of bias can be demonstrated through any combination of the following: (1) a direct personal, pecuniary interest in the outcome; (2) personal embroilment in the controversy; (3) an adjudicator's involvement in the prosecutorial process; (4) pre-commitment to the outcome of the case; or (5) evidence of institutional bias. *Exxon Corp. v. Heinze,* 32 F.3d 1399, 1403 (9th Cir.1994) ("the Constitution is concerned not only with actual bias but also with 'the appearance of justice.'"); *see also Crater v. Galaza*, 491 F.3d 1119, 1131 (9th Cir. 2007); *United States v. Berber-Tinoco*, 510 F.3d 1083, 1092 (9th Cir. 2007).

So long as Plaintiff's Complaint contains sufficient facts to support *some* cognizable claim of bias under the Due Process Clause, it will survive a motion to dismiss. *Balistreri*, 901 F.2d at 699. Here, the Complaint does that and more. Nevertheless, Defendant ignores nearly fifteen pages (Complaint ¶¶ 9-106) of

detailed factual contentions that are plainly sufficient to show that Plaintiff's allegations of bias and precommitment are plausible at the very least:

> 1) Kevin James acted as the president of the Board of Public Works; oversaw the Bureau of Street Services and its Urban Forestry Division; supervised the City's investigation into Plaintiff's tree removal, and presided over Plaintiff's appeal hearing to the Board.   [Complaint ¶¶ 16 70-76, 78, 100-05.]

> 2) Ron Lorenzen, the City's senior urban forestry official, concluded that tree removal was necessary for reasonable development of the site and recommended that the Board grant the subject tree permit.   The Board approved the recommendation and issued the permit Subsequently, Lorenzen, James, and the entire Board were subjected to significant public scrutiny over the City's general tree permit procedures and the decision to issue the tree permit. [Complaint ¶¶ 12, 28, 20, 32,  48-49, 52, 57, 101.]

> 3) Influential public figures and local, state and national politicians pressured Lorenzen, James and their respective departments to put a halt to the project.  [Complaint ¶¶ 42, 48, 57-58, 62.]

> 4) James strategized to minimize the political fallout on the Department and his Board.  [Complaint ¶¶ 46, 68-69.]

> 5) Lorenzen strategized with City officials over ways to stop the project given political pressures and even before the Gonzalez' errors were uncovered.  [Complaint ¶¶ 59-60.]

> 6) Lorenzen and James led the City's investigation over the tree removals and consulted with one another, and the lawyer for the project opponents, on the appropriate prosecution strategy prior to the City hearings.  [Complaint ¶¶ 76-77.]

> 7)  Both Lorenzen and James announced that they were pre-committed to ensure that Scorched Earth penalties were imposed on Plaintiff prior to any City hearing and prior to hearing or considering any mitigating evidence.  [Complaint ¶¶ 81-82, 84.]

> 8) Lorenzen was disqualified to act as a quasi-judicial officer in the initial City hearing because he was biased against Plaintiff, was the City's lead investigator, was personally embroiled in the matter, had a personal stake in penalizing plaintiff to deflect from his actions in issuing the permit, and had pre-committed to finding against Plaintiff. [Complaint ¶¶ 28, 48, 59, 76, 82, 91.]

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

9) President James was disqualified to act as a quasi-judicial officer over Plaintiff's appeal because he too was biased against Plaintiff, had supervised and was ultimately responsible for the City's investigation, was personally embroiled in the matter, had a political motive to penalize plaintiff and deflect substantial political heat from his department, and had pre-committed to finding against Plaintiff. [Complaint ¶¶48, 68-69,  84, 99, 101.]

These facts, and reasonable inferences drawn from them, move Plaintiff's allegations of bias and pre-commitment far past the line of plausibility to allege a valid due process violation.

The City cites to three Supreme Court cases and erroneously assumes that they are exhaustive of bias claims.  [Motion, pp. 13:18-1414:18.]  The case law, however, holds otherwise.  *See Stivers*, 71 F.3d at 741; *In re Murchison*, 349 U.S. at 136; *McIntyre v. Santa Barbara Cty. Employees' Retirement' Sys.*, 91 Cal. App. 4th 730, 735 (2001) (presumption of lack of bias "can be rebutted by a showing of conflict of interest or some other specific reason of disqualification").   Courts evaluate evidence of bias in the ***totality of the circumstances*** to determine whether a plaintiff has stated a plausible due process claim within the four corners of a complaint.  *Stivers*, 71 F.3d at 753 (individual pieces of evidence did not give rise to per se bias claim; however, evidence collectively sufficient).

### 2.    *The Complaint Pleads Sufficient Facts Of Actual Bias To Survive Defendant's Motion To Dismiss*

Plaintiff's Complaint alleges adequate facts establishing the plausibility of actual bias to call into question the fairness of the City's administrative proceedings.  *In re Murchison*, 349 U.S. at 136; *see also Stivers*, 71 F.3d at 741 (administrative agencies must be free of actual bias).  In *Stivers*, the Ninth Circuit reversed the grant of  summary judgment in a case involving the denial of a private investigator's license because the evidence was sufficient to show that a board member was actually biased against plaintiff and had a pecuniary motive in the denial of the license.  *See id.* at 737-41.  The court examined each factual allegation of bias

Case No. 2:16-cv-07148-CAS-AGR

independently to determine, in the totality of circumstances, whether there was sufficient evidence of a due process violation. *Id.* at 741-742. Plaintiff presented the following evidence: (1) a pecuniary interest in the outcome; (2) a decisionmaker's past association with plaintiff's business; (3) the adjudicator's extrajudicial statements; (4) irregular treatment during the licensing hearing; and (5) purposeful delay of plaintiff's business efforts. *Id.* at 742. The Court did not find any piece of evidence in isolation sufficient to support a *per se* violation and noted that much of the evidence presented was circumstantial. *Id.* at 743. Nonetheless, the Court held that the evidence viewed collectively raised triable issues of fact as to whether the board member was actually biased. *Id.* at 746.

Plaintiff's Complaint contains similar facts to those in *Stivers* even though Plaintiff has not yet had an opportunity to conduct discovery. Since the court in *Stivers* found triable issues of fact as to the issue of actual bias, *a fortiori,* Plaintiff's allegations of a similar array of facts, pre-discovery, which must be taken as true, must be sufficient to survive a motion to dismiss. Moreover, as noted, the same facts certainly give rise to an "appearance of bias," which is also Constitutionally impermissible. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883 (2009) ("[T]he Due Process Clause has been implemented by objective standards that do not require proof of actual bias." (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825 (1986)); *see also Mayberry v. Pennsylvania*, 400 U.S. 455, 455 (1971).

### 3.   *The Complaint Alleges Sufficient Facts Establishing Pre-Commitment on the Part of James and Lorenzen*

The City also unreasonably argues that "there is no evidence that would support a conclusion that the decisionmakers had prejudged the case." [Motion, p. 18:19-20. The City however, ignores the fact that the Complaint specifically alleges that James and Lorenzen had pre-judged the case, and is backed by direct and circumstantial details supporting the ultimate conclusion, all of which must be taken as true for purposes of this motion. The City's re-characterizations of those

allegations are inappropriate on a motion to dismiss.

Due process is violated where the decisionmaker pre-commits to decide a matter or reasonably appears to have prejudged the case. *Kenneally v. Lungren,* 967 F.2d 329, 333 (9th Cir.1992). In *In re Murchison*, a judge accused witnesses of contempt. *Id.* at 137. Subsequently, the same judge presided over the trials of the contempt charges. *Id.* The court held that such prejudgment of the case violated due process. *Id.*at 136-137. As the court in *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1913 (2016) put it, "the judge had made up his mind about the only issue in the case before the trial had even begun."

The allegations here are no different. Plaintiff alleges that Lorenzen in no uncertain terms said that he was "in agreement" that "we need to revoke all permits for the project." [Complaint ¶¶ 81-82.] The Complaint makes similar allegations against James. [Complaint ¶ 101.] Additionally, the Complaint notes that Lorenzen and James failed to disclose the mountain of *ex parte* communications they had in the year-plus prior to the City hearings as required by law, which is further circumstantial evidence of prejudgment. [Complaint ¶ 104.] The reasonable inference is that neither official made the disclosures because to do so would be to disclose the very bases for their own disqualifications.

The City argues that these correspondences do not show pre-commitment to a certain outcome, but rather only reflect the City's intention to determine damages under LAMC § 46.06 since "liability had already been established." [Motion, p. 17: 6-24.] Nonsense. Among the outcomes of the hearing, it was plainly within the authority of the decisionmakers to determine that the facts did not warrant a penalty. In any event, even if "liability had already been established," Lorenzen and James deliberated over various penalties it could impose on Plaintiff both within and outside the scope of the LAMC. [Complaint ¶ 76.] Prejudgment can be found in a damages inquiry just the same as it can in a determination as to whether a party is liable in the first place. Indeed, shortly after presenting the options, Lorenzen pre-

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

committed to a specific penalty when he said he was "in agreement" that all permits should be revoked prior to the hearing on the matter.  [Complaint ¶¶ 81-82.]

The City also argues that any pre-commitment by President James was inconsequential since "four other members of the Board voted to deny Plaintiff's appeal."  [Motion, p. 16:24-28.]  However, the law makes clear that one person's bias can taint an entire board or adjudicatory panel.

> Particularly on a small board like the Board before us, a single person's bias is likely to have a profound impact on the decisionmaking process. . . . Each member contributes not only his vote but also his voice to the deliberative process.   Thus, the fact that the tribunal's vote was unanimous does not mean that the bias of one member had no effect on the result.

*Stivers*, 71 F.3d at 747-48.

### 4.   *The Complaint Alleges Sufficient Facts Establishing Personal Embroilment on the Part of James and Lorenzen*

Relying on *Tumey v. Ohio,* 273 U.S. 510 (1927) and *Taylor v. Hayes,* 418 U.S. 488 (1974), the City concludes that Plaintiff's Complaint fails to state a claim of bias based on personal embroilment because neither a pecuniary interest nor a personal attack was involved.   [Motion, pp. 13:27-14:28.]   However, "personal embroilment" is construed broadly by the courts to include any personal stake in a decision, and is not limited to pecuniary interests or personal vendettas.   *In re Murchison,* 349 U.S. 133, 136 (1955) ("no man is permitted to try cases where he has an interest in the outcome"); *In re Complaint of Judicial Misconduct*, 816 F.3d 1266, 1267 (9th Cir. 2016) (recusal may be necessary when "a judge has a direct, personal, or substantial connection to the outcome of a case or to its parties.").

The Complaint directly alleges that James and Lorenzen were personally embroiled in the outcome of the matters pending before them.   For example, the Complaint alleges substantial facts showing the political pressure and public criticism faced by Lorenzen and James over the decision to issue Plaintiff an

13

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

extensive tree permit allowing for the removal of over 50 trees without public notice. [Complaint ¶¶ 48, 68-69, 99, 101.] In addition to such direct evidence, the reasonable inferences drawn from the allegations also support the claim in that the revocation of Plaintiff's permits presented Lorenzen and James the opportunity to clear their names, deflect criticism and scrutiny, and restore the reputations of their respective departments. *Ashcroft,* 556 U.S. at 662 (reasonable inferences are to be drawn in favor of the nonmoving party).

### 5. *The Complaint Pleads Sufficient Facts Establishing that Lorenzen and James' Conflicting Roles as Investigator, Prosecutor and Judge Created a Forbidden Risk of Bias*

The City also argues that Lorenzen and James' dual roles as investigators and adjudicators have no bearing on a bias claim. [Motion, p. 15:8.] The City is wrong. First, the cases cited by the City allowing for the dual performance of investigatory and adjudicatory functions do not apply to cases where the adjudicator was previously involved in the accusatory process. The Court in *In re Murchison* held that a judge who held witnesses in contempt could not subsequently preside over their contempt trials because his involvement in the accusatory process was inconsistent with his role as an impartial adjudicator. 349 U.S. at 136-37. Similarly, in *Golden Day Schools, Inc. v. State Dept. of Education,* 83 Cal. App. 4th 695, 711 (2000), the court determined plaintiff's due process rights were violated where a panel member presiding over plaintiff's debarment hearing regarding its audit reports was the same person that had determined the reports were unacceptable in the first place. (fair hearing "should be before an arbiter that has not participated in staff decisions . . . that appellant's audit reports are deficient").

As in *In re Murchinson* and *Golden Day Schools, Inc.*, the Complaint alleges that James sat on appeal on his own decision. [Complaint ¶¶ 76-78, 99-104.] The Complaint also alleges that James advised Lorenzen as to the penalty to impose on Plaintiff at the initial hearing and thereafter presided over the appeal hearing despite his prior involvement in the accusatory process. [*Id.*] *In re Murchison* and *Golden*

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1  *Day Schools, Inc.* prohibit such conflicts of interest.

2       Second, the line of cases the City relies upon hold only that "the combination
3  of investigative and adjudicative functions in the same agency ***does not, by itself***,
4  violate due process." *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*,
5  426 U.S. 482, 493 (1976); *Withrow*, 421 U.S. at 36.  It defies logic to assume, then,
6  that ***no set of facts*** involving a person's combined function as an investigator,
7  prosecutor, and adjudicator could amount to a due process violation.  In fact, a
8  plaintiff ***can surpass this threshold*** by demonstrating that "under a realistic
9  appraisal of psychological tendencies and human weakness, conferring investigative
10  and adjudicative powers on the same individuals poses such a risk of actual bias or
11  prejudgment that the practice must be forbidden if the guarantee of due process is to
12  be adequately implemented." *Withrow*, 421 U.S. at 47.  Thus, a plaintiff alleging
13  special facts or circumstances, such as something more than "mere familiarity" with
14  the underlying dispute, adequately alleges actionable bias.  *Breakzone Billiards v.*
15  *City of Torrance*, 81 Cal. App. 4th 1205 (2000) (due process violation found when
16  an official is "demonstrably biased" or evidence suggests lack of impartiality).

17       Here, the Complaint alleges that Lorenzen and James were not just cursorily
18  involved in the investigatory and adjudicatory aspects of the case.  Rather, they were
19  at the forefront of the investigation, advocated for a specific penalty, and presided
20  over the hearings on the matter.  [Complaint ¶¶ 16, 28, 30-32, 76-78, 91,99-104.]
21  Thus, Plaintiff has pled sufficient facts to support a plausible claim for bias.

22       Third, many of the cases cited by the City involve different employees
23  performing different functions within the same agency.  *Nightlife Partners, Ltd. v.*
24  *City of Beverly Hills*, 108 Cal. App.4th 81 (2003) (due process violation where "dual
25  functions were not held by different sections of a single office, but by a single
26  individual.")  Unlike those cases, Lorenzen, the initial advocate for Plaintiff's tree
27  permit, investigated Plaintiff's purported violation, suggested certain penalties, and
28  presided over the initial hearing to determine whether to impose punishment.

15      Case No. 2:16-cv-07148-CAS-AGR

[Complaint ¶¶ 28, 30-32, 76-78, 91.]  Likewise, James oversaw and supervised the investigation, advised Lorenzen as to the desired outcome of the initial hearing, and sat on appeal on the decision he previously participated in.  [Complaint ¶¶ 16, 76-78, 99-104.]  Thus, investigatory, prosecutorial, and adjudicatory functions were vested in single employees, a fact that significantly enhances the risk of bias.

Lastly, evidence of a questionable overlap between investigatory, adjudicatory, and prosecutorial functions is not to be viewed in isolation in evaluating a procedural due process claim.  Such evidence must be weighed in the totality of circumstances.  *Stivers*, 71 F.3d at 744 ("[W]e do not view the hostile statement in isolation; instead, we examine it in connection with all the other evidence tending to establish or rebut the charge of bias.").  Plaintiff has alleged a claim of bias on the basis of Lorenzen's and James' overlapping investigatory, adjudicatory, and prosecutorial functions in conjunction with other evidence of actual bias, institutional bias, prejudgment, and personal embroilment.

**6.**  *Plaintiff Pled Sufficient Facts To Demonstrate That Institutional Bias Created Such A High Risk Of Actual Bias To Amount To A Due Process Violation*

The City also bizarrely argues that Plaintiff failed to state a claim for institutional bias because the Complaint did not demonstrate how Defendant was financially benefitted by the decision at issue.  [Motion, p. 16:9-11.]  However, a financial incentive is not an element of an institutional bias claim.  Rather, Plaintiff's Complaint describes non-economic motivators for Defendant's decision, including extensive discussion of the mounting political pressure and public scrutiny the City sought to extinguish.  [Complaint  ¶¶ 12, 42, 48-49, 52, 57-58, 62, 101.]  Thus, Plaintiff's claim of institutional bias withstands the City's objection.

**D.**  **The Complaint Alleges Sufficient Facts Supporting A Substantive Due Process Claim**

A substantive due process claim is properly pled when the complaint (1) identifies a protected interest and (2) demonstrates that governmental action with

respect to that protected interest was arbitrary and capricious. *Halverson v. Skagit Cty.*, 42 F.3d 1257, 1262 (9th Cir. 1994).   [Complaint, ¶¶ 112-113.]   If the governmental action is not rationally related to a legitimate state interest, the action is unreasonable and violates due process. *Merrifield v. Lockyer*, 547 F.3d 978, 984, n.9 (9th Cir. 2008).   Such claims are generally fact based and not susceptible to a Rule 12(b)(6) motion to dismiss. *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1999) ("motions to dismiss . . . must be viewed with particular skepticism" because "[t]he importance of the specific facts and circumstances relating to the property and the facts and circumstances relating to the government action militate against summary resolution in most cases").

Initially, Defendant mischaracterizes this case as one involving a land use decision, which it goes on to argue is outside the protections of the Due Process Clause.   [Motion, pp. 18:27-19:3.]   But, this is not a land use case, it is a civil penalty and forfeiture case. *White v. Ford Motor Co.*, 312 F.3d 998, 1027 (9th Cir. 2002) ("[S]ubstantive due process requires that the amount of a punitive damages award be reasonably related to the state's legitimate interests in punishment and deterrence.").   And even if it was a land use case, it would still survive a motion to dismiss. *Crown Point Development, Inc. v. City of Sun Valley*, 506 F.3d 851, 854-56 (9th Cir. 2007) (improper denial of land use application).   The Complaint alleges that the City's revocation of Plaintiff's Property rights was arbitrarily severe and not rationally related to a legitimate governmental interest.   [Complaint ¶¶ 111-113.]

The City argues that "civil penalties [carrying] financial consequences that match the severity of the violation" further the governmental interest in protecting native trees.   [Motion, p. 20:7-16.]   However, the Complaint here explicitly pleads the opposite—that penalty imposed far outstripped Plaintiff's alleged culpability related to the inadvertent removal of three unpermitted trees.   [Complaint ¶ 128.]   Indeed, the Complaint alleges facts sufficient to demonstrate that, for at least three reasons, the City exceeded its statutory authority.   First, the Complaint alleges that

JMBM | Jeffer Mangels
     | Butler & Mitchell LLP

the City revoked both building *and* grading permits even though the LAMC allows only for the revocation of "building permits". [Complaint ¶¶ 94, 113.] Second, the Complaint alleges that the City acted with the specific intent to kill the planned project and extinguish vested rights. [Complaint ¶ 98.] Third, the Complaint alleges that the City slandered Plaintiff's title when it recorded documents invoking penalties the City was not authorized to impose. [Complaint ¶ 113.] The Complaint also alleges that alternative penalties were available, which would have furthered any "legitimate interests" just the same. [Complaint ¶ 76.]

The City relies on *Halverson v. Skagit County,* 42 F.3d 1257 (9th Cir. 1994) to "prove" its decision was a "rational exercise of its governmental authority." [Motion, p. 19:4-25.] However, the City again is disputing the veracity of the Complaint's allegations rather than their sufficiency to state a claim. *Halverson* held, upon summary judgment, that a County's maintenance and improvement project to provide flood level protection was a "rational exercise of governmental authority." *Id.* at 1262. *Halverson* does not foreclose Plaintiff from pleading that the City's unprecedented penalty was arbitrary and unreasonable. *Sinaloa Lake Owners Assoc. v. City of Simi Valley,* 882 F.2d 1398, 1409 (9th Cir. 1989) (due process includes substantive component guarding against arbitrary and capricious government action). The resolution of that factual question is for another day.

Lastly, Defendant glosses over Plaintiff's facial and as-applied challenges to LAMC § 46.00, *et seq.*, concluding without any reasoning that they fail as a matter of law. [Motion, p. 25:12-14.] However, the Complaint alleges sufficient facts demonstrating that the penalties authorized under LAMC § 46.06 are facially unconstitutional and in the alternative, that LAMC § 46.06 was unconstitutionally applied to Plaintiff as compared to similarly situated property owners. [Complaint ¶¶ 19, 38, 76, 88.] Absent a tailored challenge to the legal validity of the claims themselves or the sufficiency of the facts pled in support thereof, these cognizable theories of substantive due process violations remain intact.

**E.     Plaintiff Has Properly Alleged a Claim Under the Excessive Fines Clause**

The Excessive Fines Clause of the Eighth Amendment applies to forfeitures of real property. *Austin v. United States*, 509 U.S. 602, 604 (1993).  A statutory forfeiture is a "fine" for Eighth Amendment purposes if it constitutes punishment, even in part. *U.S. v. Bajakajian*, 524 U.S. 321, 331, n. 6 (1998) (superseded by statute).  Where a forfeiture is punitive, it is irrelevant whether the forfeited item is an instrumentality; the excessiveness of a punitive forfeiture requires a proportionality determination.     *Id.* at 333-34.  Here, the forfeiture of Plaintiff's Permits and revocation of its development rights to vindicate the government's interests was imposed as a penalty for violating LAMC § 46.06.  [Complaint ¶¶ 2, 88-106.]  Thus, an Excessive Fines claim is appropriate.

The City argues that the revocation of the Permits is not an excessive fine subject to Eighth Amendment review because it is not cash or in kind payment directly imposed by, and payable to, the government.  [Motion, p. 21:17-19.]  The Excessive Fines Clause is not so limited. *See U.S. v. $273,969.04 U.S. Currency*, 164 F.3d 462, 466 (9th Cir. 1999) ("To determine if action by the government violates the Excessive Fines Clause, we must first determine whether the action is punishment"); *Austin*, 509 U.S. at 607-11.

The authority cited by the City for this point is not persuasive on either factual or procedural grounds.  Procedurally, *Kim v. U.S.*, 121 F.3d 1269 (9th Cir. 1997) was decided on summary judgment on a full evidentiary record.  Factually, *Kim* involved participation in a voluntary federal program and not the surrender of valuable vested development rights to further the City's interests. *Compare Kim*, 121 F.3d at 1271, *with* Complaint ¶¶ 2, 93, 97, 101, 105.  In *Kim*, an impartial government agency made the decision to disqualify plaintiff from participating in the food stamp program. *Id.* at 1271.  Although the City places great emphasis on *Kim*, the case was decided primarily on other grounds and barely considered the

Excessive Fines issue.  *Id.* at 1276.  Rather, without analysis, the *Kim* court simply stated that permanent disqualification from the federal food stamp program was not an excessive fine because it was not a cash or in kind payment imposed by the government.  *Id.*   Stated another way, the penalty imposed in *Kim* was not a "forfeiture" because plaintiff did not transfer anything of value to the government.

Conversely, here, the City imposed penalties upon Plaintiff forfeiting vested rights in existing permits and the right to develop its Property.  The Complaint adequately pleads that revocation of Plaintiff's development rights was a form of "payment" to the City, which was concrete, measurable and of significant monetary value, that resulted in valuable benefits to the City.  For example, the forfeiture vindicated the interests of the neighbors, whom the City's politicians were eager to placate, and reduced the criticism of City officials.  [*See* Complaint ¶¶ 57-58, 84, 91.]  The penalty also furthered the government's interests by preventing Plaintiff from disturbing the Sullivan Canyon hillside, which the City acknowledges is controversial and a source of friction.  [Motion, p. 7:8-13.]  In short, especially on a motion to dismiss, there is no reason to treat the forfeiture of Plaintiff's development and Property rights any differently than any other monetary or "in kind" payment that is subject to Excessive Fines review.

### F.   Plaintiff Has Properly Alleged Facts Supporting A Denial Of Equal Protection.

The City next advances two arguments to support its Motion to Dismiss Plaintiff's equal protection claim.  First, the City argues that a "class-of-one" equal protection claim is inapplicable to state action involving discretionary decision-making.  Second, the City argues that Plaintiff was treated the same as similarly situated property owners and thus there could be no equal protection issue.  [Motion, pp. 22:22-26; 23:3-19.]  The City's arguments fail in both respects.

First, the City is mistaken that a "class-of-one" equal protection claim is uniformly prohibited in the context of discretionary state action.  Instead, the

Supreme Court has only categorically barred a class-of-one claim in the context of at-will public employment. *Engquist v. Oregon Dep't of Agr.,* 553 U.S. 591, 607 (2008) (class-of-one theory has no application in the public employment context— "and that is all we decide"). The Court reasoned that employment decisions "involve discretionary decisionmaking based on a vast array of subjective, individualized assessments" consistent with the principle of at-will employment, whereby an employee can be terminated for no reason at all. *Id.* at 603, 606.

The Court distinguished the facts from those of *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000) where a class-of-one claim was deemed proper in the context of a zoning decision. In *Olech*, a village that had typically only required 15-foot easements as a condition of connection to the municipal water supply required that plaintiff grant a 33-foot easement. *Id.* at 563. The Court upheld Plaintiff's class-of-one claim. *Id.* at 565. As the *Engquist* Court noted, at issue in *Olech* "was the existence of a clear standard [*i.e.*, the length of an easement] against which departures, even for a single plaintiff, could be readily assessed." *Engquist*, 533 U.S. at 602-03. The differential treatment in respect to that standard raised a concern of arbitrary classification requiring a rational basis. *Id.*

The allegations of the Complaint are akin to those in *Olech,* not those of *Engquist.* The Complaint alleges that "the City discriminated against Plaintiff in its handling of the permit revocation process by imposing an unprecedented penalty that has not been imposed on others similarly situated" and the City did not have a rational basis for doing so. [Complaint ¶ 128.] In other words, the City has traditionally imposed mitigation and replacement measures for violations of LAMC § 46.00 in lieu of revocation. The Complaint alleges a valid class-of-one claim based upon irrational discriminatory application of this clear standard. Indeed, whether an action is so discretionary as to bar a class-of-one claim as a matter of law is itself a question of fact inappropriate for resolution on a motion to dismiss. *See Building 11 Investors LLC v. City of Seattle,* 912 F. Supp. 2d 972, 984 (W.D. Wash.

JMBM | Jeffer Mangels Butler & Mitchell LLP

2012) ("outside of the public employment bar . . ., it appears unlikely that there are categories of government decisions entirely protected from a class-of-one claim"; whether claim is barred "turns on the context of a particular case").

Second, the City's reliance upon extrinsic evidence to contradict Plaintiff's allegations of discriminatory treatment is improper.  [Motion, p. 23:5-6.]  The Complaint alleges that the City discriminated against Plaintiff by imposing an unprecedented penalty that has not been applied to others similarly situated without a rational basis.  [Complaint, ¶ 128.]  In fact, Board President James made it his goal to selectively enforce the Scorched Earth Ordinance "to make an example of Plaintiff".  [Complaint, ¶ 104.]  The allegations are sufficient to state an Equal Protection violation.  *See Sinaloa Lake Owners Assoc. v. City of Simi Valley,* 882 F.2d 1398, 1409 (9th Cir. 1989) (conduct that is malicious, irrational or plainly arbitrary violates the Equal Protection Clause); *Merrifield*, 547 F.3d at 984, n.9 (absent a rational basis, a municipal body may not enact or apply a law "protecting one subsection of an industry at the expense of another similarly situated").  Whether the City had a rational basis for the discriminatory treatment is a question of fact, inappropriate for a motion to dismiss.  *Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1999); *Del Monte Dunes*, 920 F.2d at 1508; *Lazy Y Ranch, Ltd. v. Behrens*, 546 F.3d 580, 590-92 (9th Cir. 2008) (plaintiff may rebut facts to show classification does not further asserted purpose and purported justification a pretext).

### G.    The Complaint Alleges a Valid Mandamus Claim

The City's challenge to Plaintiff's mandamus claim is misguided.  The claim is alleged under California Code of Civil Procedure § 1094.5, which provides that a writ of mandate shall issue, as applicable here, where an agency fails to provide a fair hearing or abuses its discretion.  Cal. Civ. Proc Code § 1094.5(b).  An abuse of discretion occurs where an agency's decision is not supported by the evidence.  *Id.* § 1094.5(c).  The City's challenge fails for at least three reasons.

First, the City fails to even address Plaintiff's fair hearing claim.  *Clark v. City*

*of Hermosa Beach*, 48 Cal. App. 4th 1152, 1170 (1996) (fair hearing requires tribunal which meets standards of impartiality).  Thus, Plaintiff's cause of action will survive since a complaint need only state *some* cognizable theory of relief.  Moreover, Plaintiff's fair hearing claim is amply supported.   After all, the fair hearing requirements of administrative hearings are comparable to those of procedural due process.  *See id*; *Breakzone Billiards*, 81 Cal.App.4th at 1223-24.

Second, the City is incorrect that this action is governed by the substantial evidence test.  The City argues that all land use cases are subject to the substantial evidence test since fundamental vested rights are not implicated.  [Motion, 24:11-16.]  The City is wrong and the sole case it has cited for the proposition says no such thing.[3]   In fact, a fundamental vested right is implicated where an agency acts to revoke an issued permit or similar entitlement.  *PMI Mortg. Ins. Co. v. City of Pac. Grove*, 128 Cal. App. 3d 724, 729, n.3 (1981); *see also Goat Hill Tavern v. City of Costa Mesa*, 6 Cal. App. 4th 1519, 1529 (1992) (right to continued operation of established business fundamental); *Cadiz Land Co. v. Rail Cycle, L.P.*, 83 Cal. App. 4th 74, 111 (2000) (whether fundamental vested right implicated determined on case-by-case basis).  More to the point, the independent judgment standard applies to forfeiture cases such as this.  *Evans v. Dep't of Motor Vehicles*, 21 Cal. App. 4th 958 (1994) (license revocation affects fundamental right); *Mann v. Dep't of Motor Vehicles*, 76 Cal. App. 4th 312 (1999) (same).  Where fundamental vested rights are implicated, the Court exercises its "independent judgment" on the evidence to determine whether an abuse of discretion has occurred.  *Goat Hill Tavern*, 6 Cal. App. 4th at 1525; *Bixby v. Pierno*, 4 Cal. 3d 130, 137 (1971).  Fundamental vested rights are too significant to preclude its extinction or abridgment by a body lacking judicial power.  *Goat Hill Tavern*, 6 Cal. App. 4th at 1526.

Third, and once again, this is a pleading motion.  At issue is whether Plaintiff

---

[3] Moreover, as noted above, this is a penalty/forfeiture case and not a land use case.

JMBM | Jeffer Mangels Butler & Mitchell LLP

has alleged sufficient facts that would give right to relief.  Plainly it has.  [Complaint ¶¶ 141-48.]  It is improper to ask this Court to examine a partial and un-certified administrative record and make a determination using its independent judgment as to the appropriateness of the City's actions on a motion to dismiss. *See Kleiner v. Garrison*, 82 Cal. App. 2d 442, 445 (1947) (error for court to take judicial notice of administrative record and resolve mandamus claim on demurrer).  Among other reasons is that the Court may not take judicial notice of supposed facts that are subject to reasonable dispute, as the City asks the Court to do here.  *Lee v, City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).

### H.    The Complaint Alleges a Valid Declaratory Relief Claim

"In a case of actual controversy [a court] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  The Complaint here pleads actual controversies between Plaintiff and the City in respect to (1) whether the Scorched Earth Ordinance is unconstitutional facially or as applied; (2) whether Plaintiff was denied a fair hearing; (3) whether the City effected a taking of property without just compensation; (4) whether the revocation of grading permits (for which the City had not statutory authority) effected a taking; (5) whether Plaintiff is entitled to the reinstatement of the Permits; and (6) whether Plaintiff has vested rights to develop its Property under the terms of the Permits.  [Complaint ¶ 150.]

The City argues that Plaintiff has not alleged any facts in support of its facial challenge to LAMC § 46.06.  [Motion, p. 25:12-13.]  Not true.  The Complaint alleges that application of the Scorched Earth Ordinance constitutes a taking without just compensation.  [Complaint ¶¶ 21-24.]  The Supreme Court has held that such a takings claim may be pled as a defense in a federal court administrative enforcement proceeding without first seeking just compensation.  *Horne v. Dep't of Agric.*, 133 S. Ct. 2053, 2063 (2013).  Under the rule set out in *Horne*, Plaintiff is entitled to raise its allegation that application of the ordinance  constitutes a taking here.

JMBM | Jeffer Mangels
Butler & Mitchell LLP

The City's cases are inapposite.  In *Realty Experts Inc. v. RE Realty Experts, Inc.*, No. 11-CV-1546 JLS CAB, 2012 WL 699512 (S.D. Cal. Mar. 1, 2012), the plaintiff, unlike here, failed to plead a claim raising a federal question.  *Audette v. Int'l Longshoremen's and Warehousemen's Union*, 195 F.3d 1107 (9th Cir. 1999), involved a motion for remand and not a 12(b)(6) motion to dismiss, nor did it discuss pleading requirements for a declaratory relief claim.  Finally, *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302 (2002), is inapposite.  The question there was whether a moratorium on development that was uniformly imposed pending design of a comprehensive land use plan constituted a *per se* taking of property.  *Id.* at 306, 320.  Thus, *Tahoe-Sierra* does not reach Plaintiff's as-applied challenge.  Furthermore, at issue in *Tahoe-Sierra* was a categorical rule that the mere enactment of a temporary development moratorium gives rise to a taking.  *Id.* at 320.  Here, Plaintiff does not challenge a temporary regulation that applies to a group of property owners; but rather, a punitive statute that is applied as a penalty against individual landowners.  *See* LAMC § 46.06.  Moreover, Plaintiff also challenges the revocation of existing permits, a point not implicated in *Tahoe-Sierra*.

As the Supreme Court has stated, "while property may be regulated to a certain extent, if a regulation goes too far, it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, (1922); *see also Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2604 (2013).  Here, Plaintiff has alleged facts that LAMC § 46.06 goes "too far"—both on its face and as applied.

**IV.   CONCLUSION**

For all of the foregoing reasons, Defendant's motion should be denied.

DATED: Dec, 9, 2016        JEFFER MANGELS BUTLER & MITCHELL LLP

By: _____
                        /s/
MATTHEW D. HINKS
Attorneys for Plaintiff SULLIVAN EQUITY PARTNERS, LLC