UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:16-cv-07148-CAS(AGRx) | Date | April 12, 2017 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC v. CITY OF LOS ANGELES ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - DEFENDANT CITY OF LOS ANGELES' MOTION TO ABSTAIN OR, IN THE ALTERNATIVE, TO DECLINE SUPPLEMENTAL JURISDICTION (Dkt. 27, filed March 3, 2017)

## I.  INTRODUCTION

On September 22, 2016, plaintiff Sullivan Equity Partners, LLC filed the instant action against defendants City of Los Angeles ("City") and Does 1–50, inclusive.  Dkt. 1 ("Compl.").  Plaintiff asserted six claims against defendants: (1) denial of procedural and substantive due process, pursuant to 42 U.S.C. § 1983; (2) violation of the Excessive Fines Clause of the Eighth Amendment, pursuant to 42 U.S.C. § 1983; (3) violation of the Equal Protection Clause, pursuant to 42 U.S.C. § 1983; (4) slander of title; (5) petition for a writ of mandate, pursuant to California Code of Civil Procedure § 1094.5; and (6) declaratory relief.  Id.  Plaintiff, a real estate development company, concedes that it improperly removed three trees from a property that it was developing, in violation of Los Angeles Municipal Code §§ 46.00 et seq.  Compl. ¶¶ 34–41.  After a public hearing, the City's Bureau of Street Services ("Bureau") revoked plaintiff's building and grading permits and imposed a five-year moratorium on the issuance of future building permits as a penalty for plaintiff's violation of the municipal code.  Id. ¶ 94.  The Board of Public Works ("Board") upheld this decision on appeal.  Id. ¶ 104.  The gravamen of plaintiff's complaint is that the two administrative hearings were shams—and therefore violated plaintiff's due process rights—because members of the Bureau and the Board were biased against plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL         'O'

| Case No. | 2:16-cv-07148-CAS(AGRx) | Date | April 12, 2017 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC v. CITY OF LOS ANGELES ET AL. | | |

On January 9, 2017, the Court granted in part and denied in part the City's motion to dismiss plaintiff's complaint. Dkt. 24. Specifically, the Court dismissed without prejudice plaintiff's excessive fines, equal protection, and slander of title claims, but denied the City's motion as to plaintiff's due process, writ of mandate, and declaratory relief claims. Id. On February 8, 2017, plaintiff filed a notice of its intent to stand on its pleadings. Dkt. 25.

On March 3, 2017, the City filed a motion requesting that the Court abstain from hearing the case pursuant to Railroad Commission v. Pullman Co., 312 U.S. 496 (1941). Dkt. 27. On March 13, 2017, plaintiff filed its opposition to the City's motion, dkt. 30 ("Opp'n"), and on March 20, 2017, the City filed its reply. Dkt. 33.

## II.  BACKGROUND

Plaintiff alleges the following facts.

Plaintiff is a real estate development company that owns two vacant lots ("Properties") in the Sullivan Canyon area of the City of Los Angeles. Compl. ¶¶ 10–12. According to plaintiff, the development of the Properties has been the subject of considerable acrimony in the community. Id. ¶ 13. On July 24, 2014, plaintiff obtained building, grading, and retaining wall permits to construct a single family home on one of the Properties. Id. ¶ 14.

Plaintiff also sought and obtained a tree permit, which allowed the removal of 56 protected trees. Id. ¶ 32. Los Angeles Municipal Code ("LAMC") §§ 46.00 et seq. regulates the removal and relocation of protected trees. Id. ¶ 17. Section 46.01 defines protected trees as any Oak, Southern California Black Walnut, Western Sycamore, or California Bay tree of a certain size. Id. No protected tree may be removed or relocated absent a permit from the Board or its designated officer or employee. Id. ¶ 18. If a protected tree has been removed or relocated in violation of LAMC § 46.00, LAMC § 46.06 authorizes the Bureau to request that the Superintendent of Building withhold issuance of building permits and revoke existing building permits issued for construction that has not commenced following quasi-judicial administrative hearings. Id. ¶¶ 20–21. LAMC § 46.06 is known as the "Scorched Earth Ordinance." Id. ¶ 20. Prior to such action, the Bureau must notify the property owner in writing of its intent to act under LAMC § 46.06 and provide the owner a hearing and an opportunity to submit written evidence. Id. ¶ 22. In determining whether to revoke or withhold permits, LAMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-07148-CAS(AGRx) | Date | April 12, 2017 |
| Title | SULLIVAN EQUITY PARTNERS, LLC v. CITY OF LOS ANGELES ET AL. | | |

§ 46.06(c) provides that the Bureau shall consider the following factors: the number of trees removed or relocated, the size and age of those trees, the knowledge and intent of the property owners with respect to removal or relocation, and prior violations of the law with respect to removal and relocation of protected trees. Id. ¶ 23. A property owner may appeal the decision of the Bureau to the Board, pursuant to LAMC § 46.06(d). Id. ¶ 24. A final determination by the Bureau or Board is recorded with the County Recorder within ten days of that determination. Id.

Before the Board issued a tree permit to plaintiff, Ron Lorenzen, then the City Assistant's Chief Forester, issued a memorandum to the City's Environmental Review Unit stating that the tree removals that plaintiff sought were necessary to allow for reasonable development of the site. Id. ¶ 28.

After receiving the tree permit, plaintiff hired Ricardo Gonzalez to remove the 56 protected trees covered by the permit. Id. ¶ 34. On September 9, 2014, Gonzalez and his employees removed trees from the property that he had identified as permitted for removal. Id. ¶¶ 35–36. However, Gonzalez incorrectly removed three trees that were not covered by plaintiff's permit. Id. ¶ 37.

After the removal of the trees, neighbors opposed to plaintiff's development of the Properties were upset that the plaintiff's tree permit had been issued without notice to them. Id. ¶ 39. One individual submitted a complaint to his City Councilmember, Mike Bonin, suggesting that the removals were not permitted or improperly permitted. Id. ¶ 42. After a series of emails between Bonin and City officials, Board President Kevin James confirmed that a tree removal permit had been granted. Id. ¶ 46. According to plaintiff, political pressure mounted from a neighborhood opposition group and from prominent politicians. Id. ¶¶ 48, 55. Opponents from the neighborhood, former and current public officials, and a famous actor submitted letters and emails to, among others, Bonin and a member of his staff, Mayor Eric Garcetti and members of his staff, the City Attorney, and a City Project Planner. Id. ¶¶ 56–65.

On September 22, 2015, Gideon Kracov—counsel for the Sullivan County Property Owners Association—sent an email to James demanding that the Department of Public Works perform another site inspection of the Properties. Id. ¶ 70. Plaintiff alleges, based on information and belief, that Lorenzen—at that point, Assistant Director of Street Services—inspected the Properties on December 7, 2015, and discovered the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-07148-CAS(AGRx) | Date | April 12, 2017 |
| Title | SULLIVAN EQUITY PARTNERS, LLC v. CITY OF LOS ANGELES ET AL. | | |

three trees that Gonzalez improperly removed. Id. ¶ 75. Lorenzen reported this finding to James in an email on December 8, 2015, and set out three options for responding to the violation. Id. ¶¶ 75–76. On December 9, 2015, Greg Good—Director of Infrastructure for the Office of the Mayor—emailed James and stated: "Again, this is amazing – and you have several options. What are you thinking at this point?" Id. ¶ 79. Plaintiff alleges that Good was referring the discovery of the Gonzalez errors. Id. On December 10, 2015, in an email to Lorenzen, Bonin's Chief of Staff, Chad Molnar stated that Bonin strongly believed that the City should revoke all permits for plaintiff's project, given the violation. Id. ¶ 81. In response, Lorenzen stated that he was "in agreement." Id. ¶ 82. On December 15, 2015, Molnar emailed James, saying that Bonin felt "strongly that we need to quickly move ahead with revoking these permits" and that Lorenzen "is working through the process with the City Attorney." Id. ¶ 83. Molnar also stated that he understood that James "wanted to help with this as well." Id. Also on December 15, 2015, Debbie Dyer Harris, District Director for Bonin, sent an email to Molnar and another member of Bonin's staff, stating that Harris had received a call from the Greg Spotts, Assistant Director at the Bureau. Id. ¶ 85. Spotts reportedly told Harris that Bonin's office "wants to implement the scorched earth policy to prevent the builder from building on the site for ten years." Id. Molnar responded to Harris: "Yes, this is true. Mike feels strongly that we need to revoke all building and construction permits, and ban new permits for ten years. I will call him." Id. ¶ 86.

Plaintiff received a Notice of Administrative Hearing on December 20, 2015, indicating that three trees had been removed without a permit and that the Bureau intended to act pursuant to LAMC § 46.06. Id. ¶¶ 39, 87.

A hearing was scheduled before the Bureau on February 12, 2016. On February 10, 2016, plaintiff's attorney submitted a letter to the Board in advance of the hearing stating that the removal of the three trees was an unintentional error, that plaintiff was unaware of the error prior to the Bureau notice, that plaintiff has never improperly removed protected trees previously, and that the circumstances did not warrant the application of the "Scorched Earth" penalty. Id. ¶ 88. Plaintiff's counsel volunteered additional mitigation and replacement measures. Id. Plaintiff also submitted sworn declarations from the arborist, property owners, and site supervisor stating that the removal was unintentional, and that there was no benefit to be gained by the removal because the three trees had not blocked access or otherwise interfered with plaintiff's development plans. Id. ¶ 89.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:16-cv-07148-CAS(AGRx) | Date | April 12, 2017 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC v. CITY OF LOS ANGELES ET AL. | | |

On February 11, 2016, Molnar wrote to a "Project opponent" stating that she "personally sat down with Urban Forestry to discuss this hearing . . . and they are fully aware of CM Bonin's expectation that the department will hold the applicant accountable for the removal of the protected trees."[1] Id. ¶ 90.

On February 12, 2016, the hearing before the Bureau of Street Services took place, before Lorenzen, who served as the hearing officer. As plaintiff describes it, Lorenzen is the very same individual who recommended the issuance of the permits, was publicly scrutinized for it, acted as the City's lead investigator into the matter, "schemed" with a representative of the Mayor's office to come after plaintiff, and was "in agreement" that the plaintiff's building permits should be revoked. Id. ¶ 91. Plaintiff therefore alleges that the hearing was a sham and the result preordained. Id. During the hearing plaintiff presented evidence that the removal of the three non-permitted trees was accidental and proposed mitigation measures. Id. ¶ 92.

On March 14, 2016, the Bureau issued its determination, recommending the invocation of the "Scorched Earth Ordinance." Id. ¶ 93. Specifically, the Bureau recommended that the Department of Building and Safety revoke all existing building permits, suspend existing building permits, and suspend issuance of any new building permits on the properties for five years. Id. The Bureau's primary findings were that: (1) three of the protected trees on the Properties were removed improperly; (2) plaintiff "had implemented a comprehensive process to ensure that only those trees permitted to be removed would in reality be removed"; and (3) because trees were improperly removed in spite of these measures, plaintiff intended to willfully removed the three non-permitted trees. Id. ¶ 95. The Bureau further concluded that the three trees "were not removed by accident but intentionally to provide better access to the property or in some other fashion enable easier development." Id. ¶ 97. Plaintiff alleges that this finding cannot be sustained because "*all* of the evidence . . . was to the contrary." Id.

According to plaintiff, the revocation of existing building permits and a five-year moratorium on new permits means that any future development of the Properties would have to comply with the City's new hillside ordinance. Id. ¶ 98. The new hillside

---

[1] The City's Urban Forestry Division is a division within the Bureau of Street Services. Compl. ¶ 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-07148-CAS(AGRx) | Date | April 12, 2017 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC v. CITY OF LOS ANGELES ET AL. | | |

ordnance does not allow for the design and size of the homes that plaintiff planned for the Properties. Id. Therefore, the revocation and suspension of plaintiff's building permits eviscerates its planned project. Id.

On April 12, 2016, plaintiff timely appealed the Bureau determination to the Board of Public Works. In advance of the hearing on plaintiff's appeal, Lorenzen prepared a staff report recommending that the Board deny plaintiff's appeal. Id. ¶ 102.

On June 24, 2016, the Board heard plaintiff's appeal and voted to uphold the determination. Id. ¶ 104. James, president of the Board, presided over the hearing and made the motion to deny the appeal. Id. ¶¶ 101, 105. Plaintiff alleges that James was biased against plaintiff and plaintiff's project, and had pre-committed to ensure that the appeal was denied. Id. ¶ 101. According to plaintiff, James was "politically motivated to clear the name of the Department that had issued the tree permit in the first place[.]" Id. In addition, James and other members of Department staff failed to disclose their "*ex parte* communications." Id. ¶ 104.

As a result of the hearings before the Bureau and the Board, plaintiff's building permits have been revoked and the City refuses to issue any new permits for the Properties and will not do so five years from the date of the City's determination. Id. ¶ 106. The City has recorded its determination against the Properties. Id.

## III. LEGAL STANDARD

The Pullman abstention doctrine allows a federal court to postpone the exercise of federal jurisdiction when "a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law." C-Y Dev. Co. v. City of Redlands, 703 F.2d 375, 377 (9th Cir. 1983) (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 189 (1959)); see also Pearl Investment Co. v. City and Cty. of San Francisco, 774 F.2d 1460, 1462 (9th Cir. 1985) (under the Pullman abstention doctrine, courts should abstain in cases presenting a federal constitutional question if constitutional adjudication could be avoided or the constitutional question narrowed by a state court ruling on an uncertain question of state law). In the Ninth Circuit, three criteria must be met before Pullman abstention is appropriate:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:16-cv-07148-CAS(AGRx) | Date | April 12, 2017 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC v. CITY OF LOS ANGELES ET AL. | | |

> (1) The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open. (2) Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy. (3) The possibly determinative issue of state law is doubtful.

Smelt v. Cty. of Orange, 447 F.3d 673, 679 (9th Cir. 2006). In contrast to Younger abstention, abstention under Pullman does not require that there be a state proceeding already pending. See Baffert v. California Horse Racing Bd., 332 F.3d 613, 617 (9th Cir. 2003). Since "[t]he doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy," it is properly invoked only "where the order to parties to repair to the state court would clearly serve an important countervailing interest." Canton v. Spokane School District No. 81, 498 F.2d 840, 845 (9th Cir. 1974). Thus, courts should abstain under Pullman only "where principles of comity and federalism justify postponing the exercise of jurisdiction that Congress conferred upon federal courts." Pearl Investment, 774 F.2d at 1462.

"Abstention is not favored in section 1983 cases[,]" Toussaint v. Yockey, 722 F.2d 1490, 1495 (9th Cir. 1984), and courts are generally reluctant "to order abstention in cases involving certain civil rights claims, such as voting rights, racial equality, and first amendment rights of expression," C-Y Dev., 703 F.2d at 381 (citations omitted). However, "there is no *per se* civil rights exception to the abstention doctrine." Id.; see also Pearl Investment, 774 F.2d at 1463 (9th Cir. 1985) ("[A]bstention may be proper in a civil rights case to avoid unnecessary interference with an important state program.").

"If a court invokes Pullman abstention, it should stay the federal constitutional question until the matter has been sent to state court for a determination of the uncertain state law issue." Fireman's Fund Ins. Co. v. City of Lodi, 302 F.3d 928, 940 (9th Cir. 2002) (quotation marks omitted).

## IV. DISCUSSION

First, the Court considers whether plaintiff's complaint involves a sensitive area of social policy. The Ninth Circuit has consistently and repeatedly held that "land use planning is a sensitive area of social policy that meets the first requirement for Pullman abstention." San Remo Hotel v. City and County of San Francisco, 145 F.3d 1095, 1105 (9th Cir. 1998) (quoting Sinclair Oil Corp. v. Cty. of Santa Barbara, 96 F.3d 401, 409

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:16-cv-07148-CAS(AGRx) | Date | April 12, 2017 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC v. CITY OF LOS ANGELES ET AL. | | |

(9th Cir. 1996)); see also Rancho Palos Verdes Corp. v. City of Laguna Beach, 547 F.2d 1092, 1094–95 (9th Cir. 1976); Sederquist v. City of Tiburon, 590 F.2d 278, 281–82 (9th Cir. 1978)); Heffner v. Young, 227 Fed. App'x. 586, 587 (9th Cir. 2007); Columbia Basin Apartment Ass'n v. City of Pasco, 268 F.3d 791, 802 (9th Cir. 2001); Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga, No. 98-55262, 2000 WL 61312, *1 (9th Cir. Jan. 21, 2000); Pearl Investment, 774 F.2d at 1463–64; Bank of America National Trust and Savings Ass'n v. Summerland County Water, 767 F.2d 544, 546 (9th Cir. 1985); C-Y Development, 703 F.2d at 377; Santa Fe Land Improvement Company v. City of Chula Vista, 596 F.2d 838, 840 (9th Cir. 1979).

The parties dispute whether this is a land use case. The City argues that "land use matters form the basis of the remaining causes of action in the Complaint[.]" Motion at 8. The City contends that plaintiff alleges a violation of substantive and procedural due process and that an unconstitutional taking occurred because its building permits were revoked unlawfully, LAMC § 46.06 was applied unfairly, and the City invoked penalties it was not authorized to impose. Id. (citing Compl. ¶¶ 107–17; 149–51). Plaintiff by contrast, contends this is not a land use case, because the case "does not challenge a permit application decision, development standards, zoning designations, planning requirements or the City's right to regulate development through the permitting process—issues that are typical of land use cases." Opp'n at 8 (quotation marks omitted). Rather, plaintiff challenges LAMC § 46.06, the Scorched Earth Ordinance, which imposes penalties for the illegal removal or relocation of protected trees. Accordingly, plaintiff contends that this is a "highly-individualized penalty case that does not address or impact any generalized social policy." Id. at 9; see also id. at 10 ("[T]he current litigation focuses upon an unconstitutional penalty, the resolution of which would only affect Plaintiff without any broader impact on social policy.").

The Court finds that this case is a dispute over the application of land use policy as articulated by the Ninth Circuit and, therefore, the first requirement for Pullman abstention is met. In Columbia Basin Apartment Association v. City of Pasco, the Ninth Circuit considered the interaction of two city ordinances. 268 F.3d at 795–96. The "Pasco Ordinance" required landlords to secure a license registering each dwelling, including certification of compliance with the housing code, among other things. Id. at 795. A separate ordinance established civil penalties for violations of the Pasco

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-07148-CAS(AGRx) | Date | April 12, 2017 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC v. CITY OF LOS ANGELES ET AL. | | |

Ordinance; revocation of the landlord's business license was among the possible penalties. Id. The City of Pasco filed a civil action against certain landlords, the Shaws, to restrain them from conducting the business of residential rentals in the city without a valid business license and to enforce the Shaws' compliance with the Pasco Ordinance. Id. at 796. The City of Pasco also threatened to take civil action against other landlords, the Lawrences, who had failed to comply with the Pasco Ordinance. Id. The Shaws and Lawrences subsequently filed an action in federal district court seeking declaratory and injunctive relief under Section 1983, arguing that enforcement of the Pasco Ordinance—namely the City's decision to terminate or not issue business licenses—would violate their Fourteenth Amendment due process rights. Id. at 797–98 & n.4. In concluding that Pullman abstention was appropriate, the Ninth Circuit found that this regulatory scheme touched on land use planning questions and, therefore, held that the first criterion of Pullman abstention was met. Id. at 802. Accordingly, the Court concludes that a challenge to an individual penalty may raise land use questions where, as here, the penalty enforces a broader land use policy.

Furthermore, the imposition of a moratorium on building constitutes a land use issue. In Sederquist v. City of Tiburon, the Ninth Circuit found that the following circumstances involved land use:

> the City of Tiburon (the city) had engaged in a course of conduct which had the purpose and effect of a "taking" of [plaintiffs'] real property within the meaning of the Fifth Amendment as applied to the States through the Fourteenth [Amendment]. Their lengthy complaint alleged that by means of an 18-month moratorium on all development in an area encompassing their property, the subsequent inclusion in the "open-space element" of the city's "general plan" of the road over which they claim an easement of access to their land, and the imposition of burdensome conditions on the right to pave the access road, the city had effectively converted their property into an open park area for public enjoyment and refused to compensate them for this taking.

590 F.2d at 279–80. Therefore, Sederquist court concluded that the case touched on a sensitive area of social policy. Id. at 281–82. Similarly, in Rancho Palos Verdes Corp. v

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-07148-CAS(AGRx) | Date | April 12, 2017 |
| Title | SULLIVAN EQUITY PARTNERS, LLC v. CITY OF LOS ANGELES ET AL. | | |

City of Laguna Beach, a land owner alleged that by imposing a moratorium on all development and adopting an interim open-space element in the city's general plan, a municipality had denied him equal protection and due process of law and had taken his property without just compensation. 547 F.2d at 1093. The Ninth Circuit concluded that the "complaint involve[d] land use planning." Id. at 1094. The court in Rancho Palos Verdes arrived at this conclusion particularly because the city was "attempting to grapple with difficult land use problem through new policies and new mechanisms of regulation" and "[f]ederal courts must be wary of intervention that will stifle innovative state efforts to find solutions to complex social problems." Id. at 1095. As in Rancho Palos Verdes, the Court recognizes that LAMC § 46.06 represents the City's efforts to find a solution to a "difficult land use problem"—namely, that the Protected Tree Regulations lacked adequate enforcement mechanisms before LAMC § 46.06 entered into effect in 2006.

The second prong for Pullman abstention is met where "[a] state law question . . . has the potential of at least altering the nature of the federal constitutional questions." C-Y Development, 703 F.2d at 378. In land use cases, the Ninth Circuit has frequently found this requirement satisfied where a favorable decision on a state law claim would provide plaintiff with some or all of the relief he seeks. For example, in Sinclair Oil, the plaintiff challenged Santa Barbara County's adoption of a community plan that reduced the number of residences that could be developed on its property. 96 F.3d at 404. The plaintiff asserted, among other things, that the adoption of the plan constituted a taking under the federal and state constitutions. Id. The Ninth Circuit concluded that the second requirement for Pullman abstention was met "because, [g]iven [an] opportunity, a state court might avoid the federal constitutional issues by deciding that an illegal taking under the California Constitution has occurred." Id. at 409. The potential for a narrowing of the issues need not be certain:

> Certainly, if the California courts provide Sinclair just compensation for a taking under state law, it might be unnecessary to address the oil company's federal taking claim. Of course, adjudication of the state claims is not absolutely certain to obviate the need for considering the federal constitutional issues. Sinclair might, for example, object to the amount of compensation received. For Pullman purposes, though, it is sufficient if the state law issues might 'narrow' the federal constitutional questions. Resolution of the California law issues would most certainly narrow federal court's constitutional inquiry in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-07148-CAS(AGRx) | Date | April 12, 2017 |
| Title | SULLIVAN EQUITY PARTNERS, LLC v. CITY OF LOS ANGELES ET AL. | | |

Id. Similarly, in C-Y Development, the plaintiff challenged the City of Redlands' denial of its applications for building permits, seeking, among other things, a writ of mandate requiring the city to issue the permits. 703 F.2d at 378. The court held that the second requirement for Pullman abstention was met, observing that a writ of mandate directing the city to issue the permits would moot some of the federal issues in the case. Id. at 380. The fact that "following such hypothetical state adjudication [plaintiff] might return to federal court to seek damages for the alleged temporary deprivation of its property rights" did not render Pullman abstention inappropriate. Id.

Here, it is possible that resolution of plaintiff's writ of mandate claim will obviate the need to rule on its federal claims. For example, if plaintiff initiates litigation in state court and the state court grants plaintiff's request for administrative mandamus on the grounds that the City abused its discretion by revoking plaintiff's building permits, this would grant a substantial portion of the relief plaintiff seeks – i.e., the reinstatement of its building permits. See Santa Fe, 596 F.2d at 840 (holding that plaintiffs petition for writ of mandate pursuant to section 1094.5 to set aside the rezoning at issue, if granted, would provide the requested relief and therefore avoid the constitutional question). "Although abstention in this case may not obviate the need to decide all the federal constitutional questions, it will substantially reduce the contours of such adjudication and place it in a different posture." C-Y Development, 703 F.2d at 380. The Court therefore concludes that the second requirement for Pullman abstention is met.

Finally, as to the third requirement, the outcome of plaintiff's request for administrative mandate in state court, which involves the fact-intensive inquiry into whether the City abused its discretion, is uncertain and therefore the Court should abstain. See VH Prop. Corp. v. City of Rancho Palos Verdes, 622 F. Supp. 2d 958, 964 (C.D. Cal. 2009) (Morrow, J.) ("Relying on the local nature of land use claims, and the fact that they involve interpretation of various state and local land use laws, the Ninth Circuit has required only a minimal showing of uncertainty to satisfy the third Pullman factor in land use cases."); Sederquist, 590 F.2d at 282–83 ("Whether a city has abused its discretion by refusing to issue a building permit is by nature a question turning on the peculiar facts of each case in light of the many local and state-wide land use laws and regulations applicable to the area in question. We do not claim the ability to predict whether a state court would decide that the city here abused its discretion[.]"); Santa Fe Land, 596 F.2d at 841 ("[W]hether a city has abused its discretion or has exceeded its jurisdiction by particular open-space zoning practices 'is by nature a question turning on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-07148-CAS(AGRx) | Date | April 12, 2017 |
| Title | SULLIVAN EQUITY PARTNERS, LLC v. CITY OF LOS ANGELES ET AL. | | |

the peculiar facts of each case in light of the many local and state-wide land use laws applicable' to open-space zoning." (quoting Sederquist, 590 F.2d at 282)). The Court finds that it is uncertain whether a state court would find the revocation of all of plaintiff's existing building permits and a five-year moratorium on the issuance of any new permits permissible or arbitrary and capricious. Accordingly, the Court finds that this action should be stayed pursuant to the Pullman abstention doctrine.[2]

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the City's motion to stay the instant action under Pullman, pending resolution of plaintiff's writ of mandate claim in state court. Should plaintiff pursue its writ of mandate claim in state court, the Court retains jurisdiction to address plaintiff's federal claims involved herein, so long as plaintiff makes an England "reservation" in the state court proceeding and such claims

---

[2] Having concluded that abstention under Pullman is appropriate, the Court need not address the City's alternative request that the Court decline to exercise its supplemental jurisdiction over plaintiff's writ of mandate claim. However, the Court notes that while it may exercise supplemental jurisdiction over plaintiff's writ of mandate claim, "district courts routinely deny supplemental jurisdiction over California writ of mandate claims" because "writs of mandate are exclusively state procedural remedies, they involve complex issues of state law." Mory v. City of Chula Vista, No. 10-cv-252-JLS-WVG, 2011 WL 777914, at *2 (S.D. Cal. Mar. 1, 2011) (collecting cases); Kent v. Dir., California Office of Admin. Hearings, No. 15-cv-01926-SJO-JCG, 2016 WL 356021, at *7 (C.D. Cal. Jan. 29, 2016) ("Even assuming the Court had original jurisdiction over some of the claims, and they formed part of the same case or controversy as the remaining claims, the Court declines to exercise supplemental jurisdiction because the interests of 'federalism and comity . . . loom especially large here.' . . . As to the mandamus causes of action in particular, 'because writs of mandate are exclusively state procedural remedies, they involve complex issues of state law. Thus, district courts routinely deny supplemental jurisdiction over California writ of mandate claims.'" (quoting Mory, 2011 WL 777914, at *2)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  **'O'**

| Case No. | 2:16-cv-07148-CAS(AGRx) | Date | April 12, 2017 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC v. CITY OF LOS ANGELES ET AL. | | |

are not mooted in the state court proceeding.³ The parties are directed to notify the court within ten (10) days of any decision by the state courts.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |

---

³ Pursuant to England v. Louisiana State Board of Medical Examiners, 375 U.S. 411 (1964), "[w]hen [plaintiff] presents his state law claims to the California courts, [it] is free to present [its] federal . . . claim[s] to them as well. If [plaintiff] wishes to retain [its] right to return to federal court for adjudication of [its] federal claim[s], [plaintiff] must make an appropriate reservation in state court." San Remo, 145 F.3d at 1106 n.7 (citation omitted); see England, 375 U.S. at 422 n.12 ("We are confident that state courts, sharing the [Pullman] abstention doctrine's purpose of furthering the harmonious relation between state and federal authority, will respect a litigant's reservation of his federal claims for decision by the federal courts." (citation and quotation marks omitted)).