JEFFER MANGELS BUTLER & MITCHELL LLP
BENJAMIN M. REZNIK (Bar No. 72364)
*breznik@jmbm.com*
MATTHEW D. HINKS (Bar No. 200750)
*mhinks@jmbm.com*
SEENA M. SAMIMI (Bar No. 246335)
*ssamimi@jmbm.com*
JULIA CONSOLI-TIENSVOLD (Bar No. 324142)
*jctiensvold@jmbm.com*
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
Telephone:  (310) 203-8080
Facsimile:   (310) 203-0567

Attorneys for Plaintiff SULLIVAN
EQUITY PARTNERS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SULLIVAN EQUITY PARTNERS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, a Charter City, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:16-cv-07148-CAS-AGR<br>The Honorable Christina A. Snyder<br><br>**PLAINTIFF SULLIVAN EQUITY PARTNERS, LLC'S SUPPLEMENTAL BRIEF REGARDING PULLMAN ABSTENTION DOCTRINE AND PRECLUSIVE EFFECT OF STATE COURT JUDGMENT**<br><br>Date:     October 5, 2020<br>Time:    10:00 a.m.<br>Crtrm.:   8D, 250 W. 1st St., Los Angeles, CA 90012 |

## I. INTRODUCTION

The Court requested supplemental briefing on two issues: 1) whether the Court may abstain under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), pending resolution of the City's California state court appeal; and 2) what preclusive effect a final judgment of the California Court of Appeal would have on the claims currently before this Court.

In short, regardless of the result in the California Court of Appeal, this case will and must return to this Court for adjudication and trial, because there are two remaining claims (due process and civil rights violations under 42 U.S.C. § 1983, and declaratory relief) that are not before the California Court of Appeal. And this is true no matter whether the Court of Appeal affirms or reverses the judgment of the Superior Court in favor of Plaintiff Sullivan Equity Partners, LLC ("Plaintiff") on its writ of mandate claim, which this Court directed be litigated in the state court system. As such, Plaintiff respectfully submits that this lawsuit should not be delayed any further than it already has been (over five years), and the Court should not abstain again under *Pullman*. Plaintiff's access to justice regarding its federal claims should not be held in abeyance pending a decision from the California Court of Appeal, which will have little, if any, bearing on this matter.

## II. NATURE OF STATE COURT ACTION AND PENDING APPEAL

After this Court's April 12, 2017 ruling on the City of Los Angeles' ("City") Motion to Abstain (Dkt. 36.), on May 12, 2017, Plaintiff filed a petition for writ of administrative mandate and traditional mandate in the Los Angeles Superior Court. (Declaration of Seena Samimi, ("Samimi Decl."), ¶ 2.) The Superior Court judge issued an order granting the petition on August 12, 2019, finding that Plaintiff had proved an "unacceptable probability of bias" in the City's hearings. Dkt. 68, p. 2.

As is the case of virtually all administrative mandamus cases litigated in California state court, the petition was decided upon a narrow administrative record that the City created and certified. (*See* Samimi Decl., ¶¶ 3-10.) Plaintiff attempted,

on multiple occasions, to put additional evidence before the Superior Court via various motions to augment the record, motions for leave to take discovery, and motions to compel discovery. (Samimi Decl., ¶¶ 3-9.) However, Plaintiff saw little success in its efforts. Plaintiff served written discovery requests upon the City, which were met with objections and little to no substantive responses. (Samimi Decl., ¶ 3.) Plaintiff then moved to compel discovery, which was denied in its entirety. (Samimi Decl., ¶¶ 4, Exhibit A.) Plaintiff then filed a motion in the Superior Court seeking permission to take a limited scope of discovery, including several narrow document requests and two depositions of the key decision makers—Ron Lorenzen and Kevin James. (Samimi Decl., ¶ 5, Exhibit B.) Plaintiff's request for document discovery was denied in its entirety. (Samimi Decl., ¶ 5.) The Court permitted Plaintiff to depose Lorenzen and James, but limited those depositions to 5 narrow and specific areas of inquiry. (*Id.*) During the depositions, Plaintiff was met with objections each time counsel for the City perceived a question posed went beyond the 5 limited areas of inquiry, or even follow-up questions directly related to those areas of inquiry. (Samimi Decl., ¶ 7.) Plaintiff subsequently moved to compel further deposition testimony, but that motion was denied and the Superior Court imposed monetary sanctions on Plaintiff for seeking additional discovery. (Samimi Decl., ¶ 8, Exhibit D.) After the depositions, Plaintiff filed another motion to have the deposition transcripts added to the administrative record. However, the Superior Court allowed only 19 heavily redacted pages of the final deposition transcripts (out of a total of 212 pages in the two combined transcripts) into the administrative record. (Samimi Decl., ¶ 9.)

Plaintiff also attempted, through a motion to augment the administrative record, to include in the record 676 pages of documents that it had obtained as a result of a California Public Records Act request relevant to the issues that were pending before the Superior Court. The documents included emails between key parties with compelling evidence of bias, such as decision makers making political

requests and promises pertaining to the administrative process. (Samimi Decl., ¶ 6, Exhibit C.) That motion was largely denied except for 12 pages of documents (less than 2% of the total requested). (*Id.*)

This Court observed in footnote 3 of its August 26, 2020 Order (Dkt. 68) that the parties have referred to the proceedings before the Superior Court as a "trial." A "trial" of an administrative mandamus action in the Los Angeles Superior Court is, in actuality, a "hearing." As stated in the LASC Local Rules: "The 'trial' consists of oral argument by the parties." LASC Local Rule 3.231(m). (Samimi Decl., ¶ 10, Exhibit E.) Thus, the "trial" consists of the Superior Court's consideration of the parties' opening, opposition and reply briefs in support of the writ petition, the administrative record, and the arguments of counsel. (Samimi Decl, ¶ 10.) An administrative mandamus proceeding does not involve the live presentation of evidence, there is no witness testimony, and consequently no right to cross examine witnesses. (*Id.*) Likewise, there is no jury. (*Id.*)

## III. REGARDLESS OF THE RESULT IN THE STATE COURT APPEAL, A TRIAL WILL BE REQUIRED IN THIS LAWSUIT

There are two issues pending in the State Court of Appeal. The City appealed from the judgment of the Superior Court in which it found that the City failed to provide Plaintiff with a fair hearing before revoking the building and grading permits that Plaintiffs obtained for the development of its property, and ordered the City to rescind the penalty. (Samimi Decl., ¶ 11) Plaintiff had also included in its petition a separate claim that the City violated the law when it revoked Plaintiffs' grading permits because the ordinances under which the City acted give the City no such authority to do so. (Samimi Decl., ¶ 12.) The Superior Court declined to rule on that claim finding it to be moot in light of the order directing revocation of the penalty. (*Id.*) Plaintiff filed an appeal from the Superior Court's mootness ruling. (*Id.*) Regardless of how those issues are decided, a trial in this Court will be necessary for adjudication of the claims pending here.

### A.  A Decision Affirming the Superior Court's Judgment Would Not Resolve Civil Rights, Due Process and Declaratory Relief Claims

Despite the limitations of an administrative mandamus action, Plaintiff prevailed in the lawsuit in the Superior Court and proved that there was an "unacceptable probability of bias" on the part of the decision makers that presided over the City's administrative hearings.

The City contends now that the Court should abstain for the second time under *Pullman* (even though it stipulated to lift the initial stay so it could move to dismiss Plaintiff's inverse condemnation claim, which the Court granted on 1/22/20). Dkt. 54. Doing so would result in a stay lasting at least 18 months or so, and potentially several years. The City contends that a further lengthy delay of this lawsuit is justified because, assuming the judgment is affirmed, Plaintiff could then assert that the now-final judgment is subject to claim or issue preclusion in these proceedings. That may be true, but even that would require further proceedings in this Court, likely a motion for partial summary judgment as to liability for the Section 1983 civil rights violation.[1]

Moreover, the application of issue or claim preclusion here would be limited to the issue of liability only. Thus, assuming an affirmance and assuming that affirmance results in a ruling that the civil rights and due process violations have been established, a trial in this Court will always be necessary to prove the amount of damages proximately caused by the violation.

Regardless of the impact of an affirmance on these proceedings, Plaintiff opposes a further lengthy stay of this lawsuit. Plaintiff is confident that it will be able to prove in this Court, just as it did in the Superior Court based only upon an

---

[1] The elements of issue preclusion that Plaintiff would need to prove are: 1) final adjudication 2) of an identical issue 3) actually litigated and necessarily decided in the first suit and 4) asserted against one who was a party in the first suit or in privity with that party. *DKN Holdings, LLC v. Faerber*, 61 Cal. 4th 813, 825 (2015).

administrative record and without witnesses, that the City unlawfully deprived it of a fair forum with nonbiased decision makers to adjudicate the charges that the City leveled against it. A further delay will prejudice Plaintiff's ability to seek justice for the City's wrongs. Although this case was originally filed in 2016 and concerns events occurring in 2013 and 2014 (Dkt. 45, par. 31, 32, 36, 37, 88, 91, 104), Plaintiff has been deprived of the ability to take all but the most limited of discovery—two depositions on five narrow topics, with no document demands or other written discovery. (Samimi Decl., ¶ 3-10.) Thus, Plaintiff has been unable to record witnesses' testimony or obtain documents and other information in the hands of the City and third parties. Memories fade, and people and evidence become unavailable. A further lengthy delay may mean that Plaintiff is never able to uncover additional evidence of the City's wrongdoing to which it is entitled.

Moreover, assuming the California Court of Appeal affirms the judgment, Plaintiff's first cause of action for civil rights violations and third cause of action for declaratory relief would remain, both of which encompass different issues and demands for relief. Dkt. 45, pp. 27-32. For example, Plaintiff's third cause of action requests a declaration of rights as to six broad-ranging controversies. Dkt. 45, p. 30. Likewise, Plaintiff prays for compensatory damages, reasonable attorneys' fees, and exemplary and punitive damages, all of which depend on the federal claims in this case and are not available in writ proceedings. Plaintiff's attorneys' fees claim in particular is grounded in federal law under 42 U.S.C. § 1988. Dkt. 45, pp. 31-32; *Stephens v. Tielsch*, 502 F.2d 1360, 1362 (9th Cir. 1974) ("abstention [in this case] would seriously undermine the remedy afforded by the civil rights acts."); *Pue v. Sillas*, 632 F.2d 74, 81 (9th Cir. 1980) ("state remedies supplement, but do not supplant, federal remedies under section 1983.").

Consequently, final resolution of the writ claim by the Court of Appeal will neither dispose of the federal constitutional claims at issue nor provide Plaintiff with relief it seeks. Accordingly, various federal issues alleged in connection with

Plaintiff's due process and declaratory relief claims, including the facial and as-applied due process challenges, and the demand for damages, cannot be eliminated or precluded by resolution of the writ. *Pub. Utilities Comm'n of Ohio v. United Fuel Gas Co.*, 317 U.S. 456, 463, (1943) ("no state court ruling on local law could settle the federal questions that necessarily remain."). In light of the limited function of mandamus actions, resolution of the state claim would not eliminate the constitutional questions or terminate the controversy.

Moreover, while resolution of the writ of mandate claim addresses whether Plaintiff was afforded a fair hearing, it only does so in the context of the standards of review applicable to mandamus actions. Equating a "fair hearing" claim in the writ context with a federal due process challenge is premature and inappropriate at this juncture. Although Plaintiff reserves the right to make a preclusion argument to the extent that this Court abstains, the argument is at the very least uncertain.

### B. Reversal Would Not be Dispositive of Plaintiff's Claims

On the other hand, if the California Court of Appeal reverses the judgment, then issue or claim preclusion would be entirely inapplicable here. Issue preclusion *cannot* apply to bar Plaintiff's 42 U.S.C. § 1983 claims because the writ proceeding was limited to a review of the narrow administrative record, and did not afford Plaintiff the full opportunity to litigate its claims, as described in Section II above, and the concurrently filed Samimi Declaration and exhibits.

The Ninth Circuit has confirmed that such limitations preclude the application of issue or claim preclusion to a plaintiff's civil rights claims. In *Honey v. Distelrath*, 195 F.3d 531, 533 (9th Cir. 1999), the court explained:

> Because the state proceeding was a mandamus action, the ordinary claim preclusion rules that bar parties from relitigating claims already decided by courts on the merits do not apply here. Under the rule in *Migra v. Warren City School Dist.*, 465 U.S. 75 (1984), a petitioner's state court judgment has the same claim preclusive effect in federal court that the judgment would have in the state courts. The rule in California state courts was set out in *Mata v. City of Los Angeles*, 20

Cal.App.4th 141, 149 (Cal. 1993), in which **the California supreme court held that a mandamus action is a "special proceeding" and does not bar a subsequent § 1983 action**. Therefore, claim preclusion does not bar Honey's § 1983 action.

*See also Weinberg. v. Whatcom County*, 241 F.3d 746, 750 (9th Cir. 2001) (same, quoting and following *Honey*); *Garden City, Inc. v. City of San Jose*, 2013 U.S. Dist. LEXIS 144977, *6-*7 (N.D. Cal., Oct. 3, 2013) ("The Ninth Circuit, however, has explicitly and repeatedly held that California's res judicata doctrine does not apply claim preclusion to mandamus proceedings.")

    The reasoning behind this rule was further expanded upon in *North Pacifica, LLC v. City of Pacifica*, 366 F. Supp. 2d 927, 932-33 (2005), which answers the question of whether a 1094.5 action constitutes an "adequate opportunity to litigate" for preclusive purposes where the plaintiff contends that it was deprived of a fair hearing at the administrative level. There, the city argued that a developer was collaterally estopped from challenging a project condition where the city council had approved the condition and the approval was not challenged through administrative writ proceedings. *Id.* at 928. Like the facts in the case at bar, the plaintiff in *North Pacifica* contended that the city failed to give it a proper hearing at the administrative level. *Id.* at 933. On this basis, the court held that even if the plaintiff had pursued an administrative writ, he still would not have been given an "adequate opportunity to litigate" because the 1094.5 procedure "limited [plaintiff] to the already established administrative record." *Id.*

    Further, despite the fact that the court in *North Pacifica* acknowledged that augmentation of the record may have been possible in a 1094.5 proceeding "in limited circumstances," it maintained that "given this restriction on evidence," 1094.5 proceedings would still not constitute a "full and fair adjudication of [plaintiff's] constitutional claims … ." *Id*; *see also Embury v. King*, 191 F. Supp. 2d 1071, 1083-1084 (2001) ("mandamus proceeding of section 1094.5" does not provide "an adequate opportunity to litigate" because "the writ procedure is

effectively limited to the administrative record, [and] it is an insufficient remedy when Plaintiff alleges that he was denied any opportunity to present his case at the administrative level.").

California case law also confirms this point. Collateral estoppel cannot apply where writ proceedings do not afford a full hearing based on all of the evidence and did not involve "all aspects of full litigation", including "the right to produce oral testimony or to compel witnesses to attend for deposition or cross-examination" *Groves v. Peterson*, 100 Cal. App. 4th 659, 667-71 (2002). Courts routinely note that if new evidence could be presented in a subsequent proceeding that could not have been presented in a prior proceeding, collateral estoppel will not apply. *Id.* (reversing the lower court's application of collateral estoppel where new evidence could be presented in the subsequent proceeding); *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511-12 (2009) (applying collateral estoppel only where no new evidence could be introduced in the subsequent proceeding, "[t]he 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether ultimate issues or dispositions are the same"); *Border Business Park, Inc. v. City of San Diego*, 142 Cal. App. 4th 1538 (2006) (applying collateral estoppel only where plaintiff had the opportunity to raise the new factual evidence in prior proceeding). Given these authorities, there is little question that a reversal by the Court of Appeal would have no impact upon Plaintiff's civil rights claims in this Court. There is no justification here for a further lengthy stay.

## IV. ABSTENTION UNDER *PULLMAN* IS NOT APPROPRIATE

In general, application of the *Pullman* abstention doctrine is seldom appropriate because it "is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy." *Canton v. Spokane Sch. Dist. No. 81,* 498 F.2d 840, 845 (9th Cir.1974), *overruled on other grounds as recognized by Heath v. Cleary,* 708 F.2d 1376, 1378 n. 2 (9th Cir.1983); *Wolfson v. Brammer*, 616 F.3d 1045, 1066 (9th Cir. 2010); *see also Ripplinger v. Collins*, 868 F.2d 1043, 1048 (9th

Cir. 1989) ("Abstention from the exercise of federal jurisdiction is the exception rather than the rule."). Abstention is invoked only when necessary to "avoid erroneous determinations of state law, which may cause unnecessary constitutional adjudication." *Pue v. Sillas*, 632 F.2d 74, 81 (9th Cir. 1980).

Specifically, as it relates to this case, abstention is disfavored and rarely applied in civil rights cases. *Toussaint v. Yockey*, 722 F.2d 1490, 1495 (9th Cir. 1984) ("Abstention is not favored in section 1983 cases."); *Stephens v. Tielsch*, 502 F.2d 1360, 1362 (9th Cir. 1974) ("civil rights cases 'are the least likely candidates for abstention.'"); *Pearl Inv. Co. v. City & Cty. of San Francisco*, 774 F.2d 1460, 1463 (9th Cir. 1985) ("courts should be reluctant to abstain in civil rights cases regardless of the type of constitutional interest at stake; abstention can delay the redress of significant constitutional wrongs.")

*Pullman* abstention is only available if three factors are met: "(1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) [the proper resolution of] the possible determinative issue of state law is uncertain." *Canton,* 498 F.2d at 845; *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003). *Pullman* abstention is inapplicable if any one factor is absent. *Fireman's Fund Ins. Co. v. City of Lodi*, California, 302 F.3d 928, 940 (9th Cir. 2002) ("there is no discretion to abstain in cases that do not meet the requirements of the abstention doctrine"). Although there is **no discretion to abstain** if any of the three factors are **not satisfied**, the Court does indeed have discretion and authority to **decline abstention** even if the three factors **are satisfied**, and should do so here. *Shamrock Dev. Co. v. Concord*, 656 F.2d 1380, 1385 (9th Cir. 1981) (holding that although all three *Pullman* factors were met, the district court did not abuse its discretion by declining to abstain); *United States v. Morros*, 268 F.3d 695, 703 (9th Cir. 2001) ("We review *de novo* whether the facts of the instant case confirm to

these requirements. If they do, we review the district court's decision to abstain for an abuse of discretion.").[2]

The Court should be wary of abstaining in a case that "involves an issue of particular federal concern." *Ripplinger*, 868 F.2d at 1049. Here, the City's actions had and continue to have a chilling effect on Plaintiff's federal due process rights, an issue of particular federal concern warranting the denial of the City's motion. As noted by the court in *Stephens v. Tielsch*, 502 F.2d 1360, 1362 (9th Cir. 1974):

> [A] rule requiring abstention would seriously undermine the remedy afforded by the civil rights acts. Since most states have both some form of due process clause and some form of equal protection clause, abstention would be necessary, or at least within the power of the district judge, in nearly every civil rights action. Consequently, litigants' access to a federal forum would be significantly delayed. That would endanger the very effectiveness of the civil rights jurisdiction.

*Id.* at 1362.

Here, Plaintiff's access to justice on its federal claims has been delayed long enough. The Court should not abstain under *Pullman* given its limited applicability and disfavored status in civil rights cases under 42 U.S.C. § 1983, and the unreasonable delay that it would cause.

## V. CONCLUSION

This Court should deny the City's Motion in its totality.

DATED: September 25, 2020     JEFFER MANGELS BUTLER & MITCHELL LLP

By: /s/ Matthew D. Hinks
MATTHEW D. HINKS
Attorneys for Plaintiff SULLIVAN EQUITY PARTNERS, LLC

---

[2] Plaintiff has previously set forth why the three factors are not satisfied, in its opposition to the City's original Motion to Abstain filed on March 3, 2017. Dkt. 30.