UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

Not Present                          Not Present

**Proceedings:**    (IN CHAMBERS) - MOTION FOR JUDGMENT ON THE
PLEADINGS (Dkt. 96, filed on JULY 7, 2023)

## I.    INTRODUCTION

On September 22, 2016, plaintiff Sullivan Equity Partners, LLC filed the instant action against defendants City of Los Angeles (the "City") and Does 1–50, inclusive. Dkt. 1 ("Compl."). Plaintiff asserted six claims against defendants: (1) denial of procedural and substantive due process, pursuant to 42 U.S.C. § 1983; (2) violation of the Excessive Fines Clause of the Eighth Amendment, pursuant to 42 U.S.C. § 1983; (3) violation of the Equal Protection Clause, pursuant to 42 U.S.C. § 1983; (4) slander of title; (5) petition for a writ of mandate, pursuant to California Code of Civil Procedure § 1094.5; and (6) declaratory relief. Id. On January 9, 2017, the Court granted in part and denied in part the City's motion to dismiss plaintiff's complaint. Dkt. 24. Specifically, the Court dismissed without prejudice plaintiff's excessive fines, equal protection, and slander of title claims, but denied the City's motion as to plaintiff's due process, writ of mandate, and declaratory relief claims. Id. On February 8, 2017, plaintiff filed a notice of its intent to stand on its pleadings. Dkt. 25.

Plaintiff, a real estate development company, concedes that it improperly removed three trees from a property that it was developing, in violation of Los Angeles Municipal Code ("LAMC") §§ 46.00 et seq. FAC ¶¶ 34–41. After a public hearing, the City's Bureau of Street Services ("Bureau") revoked plaintiff's building and grading permits and imposed a five-year moratorium on the issuance of future building permits as a penalty for plaintiff's violation of the municipal code. Id. ¶¶ 93-94. The Board of Public Works ("Board") upheld this decision on appeal. Id. ¶ 104. The gravamen of plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

complaint is that the two administrative hearings were shams—and therefore violated plaintiff's due process rights—because members of the Bureau and the Board were biased against plaintiff.

On March 3, 2017, the City filed a motion requesting that the Court abstain from hearing the case pursuant to <u>Railroad Commission v. Pullman Co.</u>, 312 U.S. 496 (1941). Dkt. 27. On April 12, 2017, the Court granted the City's motion and stayed this action pending resolution of plaintiff's writ of mandate claim in state court, finding that abstention was appropriate under <u>Pullman</u> because plaintiff's complaint concerned a sensitive area of social policy—land use, plaintiff's writ of mandate claims could obviate its federal claims, and the outcome of plaintiff's writ petition in state court was uncertain. Dkts. 36, 37. In its order, the Court stated that it would retain jurisdiction to address plaintiff's federal claims so long as plaintiff makes a reservation in the state court proceeding under <u>England v. Louisiana State Board of Medical Examiners,</u> 375 U.S. 411 (1964), and such claims are not mooted in the state court proceeding. Dkt. 36.

On May 12, 2017, plaintiff filed a petition and complaint for writ of mandate and for inverse condemnation in Los Angeles Superior Court.[1] Dkt. 96, RJN, Exh. A. Plaintiff included an <u>England</u> reservation stating that it "expressly reserves its rights to return to the federal court in the Central District of California for adjudication of the federal claims previously alleged . . . , including claims for Procedural Due Process

---

[1] The City filed a request for judicial notice in connection with its motion, requesting that the Court take notice of five exhibits. Dkt. 96-1 ("RJN"). These include (1) the First Amended Verified Petition For Writ Of Mandate And Complaint filed in Los Angeles Superior Court Case No. BS169541 on or about May 12, 2017; (2) the minute order entitled "Nature of Proceedings: Hearing On Petition For Writ Of Mandate Ruling On Submitted Matter" filed in Los Angeles Superior Court Case No. BS169541 on or about August 12, 2019; (3) the Status Report Re State Court Appeal filed in Central District Court Case No. 2:16-cv-07148-CAS-AGR on September 2, 2022; (4) the signed judgment in favor of City, dated April 24, 2023, in the matter of Sullivan Equity Partners LLC vs City of Los Angeles, Los Angeles Superior Court Case No. BS169541; and (5) LAMC § 46.00, et seq., amended by Ordinance Number 177404, entitled "Preservation of Protected Trees." <u>Id.</u> The Court finds that judicial notice of these exhibits is appropriate pursuant to Federal Rule of Evidence 201(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

Violations; Substantive Due Process Violations; Civil Rights Violations, 42 U.S.C. §
1983; and Declaratory Relief." Id. ¶ 110.  The petition brought causes of action for: (1)
an administrative writ pursuant to California Code of Civil Procedure § 1094.5, alleging
that the City failed to provide plaintiff with a fair hearing and that the City's decision was
not supported by the evidence; (2) an administrative writ pursuant to California Code of
Civil Procedure § 1085, alleging that the City acted outside of its authority when it
revoked plaintiff's grading permits; and (3) inverse condemnation. Id. ¶ 111-129.  On
December 12, 2017, the Superior Court stayed the inverse condemnation claim pending
resolution of the writ claims.  Dkt. 96, RJN, Exh. B.

On August 12, 2019, following a hearing on the matter, the Superior Court granted
plaintiff's writ petition on the first cause of action, after concluding that certain *ex parte*
communications created an unacceptable probability of bias in the administrative
proceedings. Id.  The Superior Court denied plaintiff's second cause of action as moot.
Dkt. 96, RJN, Exh. C at 6.

On September 4, 2019, plaintiff notified this Court of the Superior Court's ruling
on plaintiff's state court petition for writ of mandate.  Dkt. 42.  On October 2, 2019, the
parties filed a joint stipulation to file an amended complaint.  Dkt. 44.  Plaintiff filed a
First Amended Complaint (the "FAC") on October 2, 2019.  Dkt. 45.  Plaintiff's FAC
asserts three claims against the City: (1) denial of procedural and substantive due process,
pursuant to 42 U.S.C. § 1983; (2) inverse condemnation in violation of the Fifth and
Fourteenth Amendments, pursuant to 42 U.S.C. § 1983; and (3) a claim for declaratory
judgment that plaintiff has a right to have its permits reinstated on account of numerous
constitutional violations. Id.

On November 25, 2019, the City filed a motion to dismiss the FAC's claim for
inverse condemnation.  Dkt. 49.  On January 22, 2020, the Court granted the City's
motion to dismiss without prejudice, finding that plaintiff's inverse condemnation claim
was not ripe because the Superior Court had not yet issued a final writ that would allow
the Court to determine the extent of the alleged taking.  Dkt. 54.  The City filed its
answer to the FAC on February 14, 2020.  Dkt. 55.

On July 20, 2020, the City filed a motion to stay this action pending resolution of
its state court appeal of the Superior Court's writ order.  Dkt. 63.  On October 5, 2020,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                        **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|----------|--------------------------|------|---------------------|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

the Court issued an order reinstating the stay under <u>Pullman</u> pending final resolution of plaintiff's writ of mandate claim in state court.  Dkt. 72.

On July 19, 2022, the Second District Court of Appeal (the "appeals court") reversed the Superior Court's finding on the first cause of action, holding that plaintiff had failed to demonstrate that the City's administrative proceedings were unfair.  Dkt. 96, RJN, Exh. C.[2]  The appeals court specifically concluded that "there is insufficient evidence of bias to establish a violation of due process."  <u>Id.</u> at 29.  Subsequently, the Superior Court set a writ trial date to hear the remaining issue of whether there were sufficient findings and substantial evidence to support the administrative findings.  Dkt. 96, RJN, Exh. D.  On April 10, 2023, following the trial, the Superior Court issued a final order ruling against plaintiff and denying the petition.  <u>Id.</u>

On July 7, 2023, the City filed the instant motion for judgment on the pleadings on the two remaining claims in the FAC.  Dkt. 96 ("Mot.").  On July 14, 2023, plaintiff filed an opposition to the City's motion and requested leave to amend the FAC to replead its inverse condemnation claim.  Dkt. 99 ("Opp.").  On July 21, 2023, the City filed a reply in support of its motion.  Dkt. 100 ("Reply").

On July 31, 2023, the Court held a hearing on the City's motion for judgment on the pleadings.  On August 1, 2023, the Court issued an order requesting that plaintiff submit a supplemental brief addressing whether it had a full and fair opportunity to litigate its claims in state court.  Dkt. 102.  On August 10, 2023, plaintiff filed its supplemental brief in opposition to the City's motion for judgment on the pleadings.  Dkt. 103.  On August 14, 2023, plaintiff filed a declaration in support of its supplemental brief.  Dkt. 104.  Even though the Court did not request any briefing from the City, the City filed a supplemental brief in support of its motion for judgment on the pleadings on August 14, 2023.  Dkt. 105.

The Court has reviewed the City's motion for judgment on the pleadings, plaintiff's opposition to the City's motion, and the City's reply in support of its motion, as well as the supplemental brief filed by plaintiff and the supplemental brief filed by the City in response.

---

[2]  The appeals court affirmed the Superior Court's dismissal of the second cause of action.  <u>Id.</u> at 43.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

### A.    Plaintiff's Factual Allegations

Plaintiff alleges the following facts in the FAC.

Plaintiff is a real estate development company that owns two vacant lots ("Properties") in the Sullivan Canyon area of the City of Los Angeles.  FAC ¶¶ 10–12.  According to plaintiff, the development of the Properties has been the subject of considerable acrimony in the community.  Id. ¶ 13.  On July 24, 2014, plaintiff obtained building, grading, and retaining wall permits to construct a single-family home on one of the Properties.  Id. ¶ 14.

Plaintiff also sought and obtained a tree permit, which allowed the removal of 56 protected trees.  Id. ¶ 32.  LAMC §§ 46.00 et seq. (the "Protected Tree Ordinance") regulates the removal and relocation of protected trees.  Id. ¶ 17.  Section 46.01 defines protected trees as any Oak, Southern California Black Walnut, Western Sycamore, or California Bay tree of a certain size.  Id.  No protected tree may be removed or relocated absent a permit from the Board or its designated officer or employee.  Id. ¶ 18.  If a protected tree has been removed or relocated in violation of LAMC § 46.00, LAMC § 46.06 authorizes the Bureau to request that the Superintendent of Building withhold issuance of building permits and revoke existing building permits issued for construction that has not commenced following quasi-judicial administrative hearings.  Id. ¶¶ 20–21.  LAMC § 46.06 is known as the "Scorched Earth Ordinance."  Id. ¶ 20.  Prior to such action, the Bureau must notify the property owner in writing of its intent to act under LAMC § 46.06 and provide the owner a hearing and an opportunity to submit written evidence.  Id. ¶ 22.  In determining whether to revoke or withhold permits, LAMC § 46.06(c) provides that the Bureau shall consider the following factors: the number of trees removed or relocated, the size and age of those trees, the knowledge and intent of the property owners with respect to removal or relocation, and prior violations of the law with respect to removal and relocation of protected trees.  Id. ¶ 23.  A property owner may appeal the decision of the Bureau to the Board, pursuant to LAMC § 46.06(d).  Id. ¶ 24.  A final determination by the Bureau or Board is recorded with the County Recorder within ten days of that determination.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

Before the Board issued a tree permit to plaintiff, Ron Lorenzen, then the City Assistant's Chief Forester, issued a memorandum to the City's Environmental Review Unit stating that the tree removals that plaintiff sought were necessary to allow for reasonable development of the site. Id. ¶ 28.

After receiving the tree permit, plaintiff hired Ricardo Gonzalez to remove the 56 protected trees covered by the permit. Id. ¶ 34. On September 9, 2014, Gonzalez and his employees removed trees from the property that he had identified as permitted for removal. Id. ¶¶ 35–36. However, Gonzalez incorrectly removed three trees that were not covered by plaintiff's permit. Id. ¶ 37.

After the removal of the trees, neighbors opposed to plaintiff's development of the Properties were upset that plaintiff's tree permit had been issued without notice to them. Id. ¶ 39. One individual submitted a complaint to his City Councilmember, Mike Bonin, suggesting that the removals were not permitted or improperly permitted. Id. ¶ 42. After a series of emails between Bonin and City officials, Board President Kevin James confirmed that a tree removal permit had been granted. Id. ¶ 46. According to plaintiff, political pressure mounted from a neighborhood opposition group and from prominent politicians. Id. ¶¶ 48, 55. Opponents from the neighborhood, former and current public officials, and a famous actor submitted letters and emails to, among others, Bonin and a member of his staff, Mayor Eric Garcetti and members of his staff, the City Attorney, and a City Project Planner. Id. ¶¶ 56–65.

On September 22, 2015, Gideon Kracov—counsel for the Sullivan County Property Owners Association—sent an email to James demanding that the Department of Public Works perform another site inspection of the Properties. Id. ¶ 70. Plaintiff alleges, based on information and belief, that Lorenzen—at that point, Assistant Director of Street Services—inspected the Properties on December 7, 2015, and discovered the three trees that Gonzalez improperly removed. Id. ¶ 75. Lorenzen reported this finding to James in an email on December 8, 2015, and set out three options for responding to the violation. Id. ¶¶ 75–76. On December 9, 2015, Greg Good—Director of Infrastructure for the Office of the Mayor—emailed James and stated: "Again, this is amazing – and you have several options. What are you thinking at this point?" Id. ¶ 79. Plaintiff alleges that Good was referring to the discovery of the Gonzalez errors. Id. On December 10, 2015, in an email to Lorenzen, Bonin's Chief of Staff, Chad Molnar stated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**             **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

that Bonin strongly believed that the City should revoke all permits for plaintiff's project, given the violation.  Id. ¶ 81.  In response, Lorenzen stated that he was "in agreement." Id. ¶ 82.  On December 15, 2015, Molnar emailed James, saying that Bonin felt "strongly that we need to quickly move ahead with revoking these permits" and that Lorenzen "is working through the process with the City Attorney."  Id. ¶ 83.  Molnar also stated that he understood that James "wanted to help with this as well."  Id.  Also on December 15, 2015, Debbie Dyer Harris, District Director for Bonin, sent an email to Molnar and another member of Bonin's staff, stating that Harris had received a call from the Greg Spotts, Assistant Director at the Bureau.  Id. ¶ 85.  Spotts reportedly told Harris that Bonin's office "wants to implement the scorched earth policy to prevent the builder from building on the site for ten years."  Id.  Molnar responded to Harris: "Yes, this is true. Mike feels strongly that we need to revoke all building and construction permits, and ban new permits for ten years.  I will call him."  Id. ¶ 86.

Plaintiff received a Notice of Administrative Hearing on December 20, 2015, indicating that three trees had been removed without a permit and that the Bureau intended to act pursuant to LAMC § 46.06.  Id. ¶¶ 39, 87.

A hearing was scheduled before the Bureau on February 12, 2016.  On February 10, 2016, plaintiff's attorney submitted a letter to the Board in advance of the hearing stating that the removal of the three trees was an unintentional error, that plaintiff was unaware of the error prior to the Bureau notice, that plaintiff has never improperly removed protected trees previously, and that the circumstances did not warrant the application of the "Scorched Earth" penalty.  Id. ¶ 88.  Plaintiff's counsel volunteered additional mitigation and replacement measures.  Id.  Plaintiff also submitted sworn declarations from the arborist, property owners, and site supervisor stating that the removal was unintentional, and that there was no benefit to be gained by the removal because the three trees had not blocked access or otherwise interfered with plaintiff's development plans.  Id. ¶ 89.

On February 11, 2016, Molnar wrote to a "Project opponent" stating that she "personally sat down with Urban Forestry to discuss this hearing . . . and they are fully

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

aware of CM Bonin's expectation that the department will hold the applicant accountable for the removal of the protected trees."[3] Id. ¶ 90.

On February 12, 2016, the hearing before the Bureau of Street Services took place, before Lorenzen, who served as the hearing officer. As plaintiff describes it, Lorenzen is the very same individual who recommended the issuance of the permits, was publicly scrutinized for it, acted as the City's lead investigator into the matter, "schemed" with a representative of the Mayor's office to come after plaintiff, and was "in agreement" that the plaintiff's building permits should be revoked. Id. ¶ 91. Plaintiff therefore alleges that the hearing was a sham and the result preordained. Id. During the hearing plaintiff presented evidence that the removal of the three non-permitted trees was accidental and proposed mitigation measures. Id. ¶ 92.

On March 14, 2016, the Bureau issued its determination, recommending the invocation of the "Scorched Earth Ordinance." Id. ¶ 93. Specifically, the Bureau recommended that the Department of Building and Safety revoke all existing building permits, suspend existing building permits, and suspend issuance of any new building permits on the properties for five years. Id. The Bureau's primary findings were that: (1) three of the protected trees on the Properties were removed improperly; (2) plaintiff "had implemented a comprehensive process to ensure that only those trees permitted to be removed would in reality be removed"; and (3) because trees were improperly removed in spite of these measures, plaintiff intended to willfully remove the three non-permitted trees. Id. ¶ 95. The Bureau further concluded that the three trees "were not removed by accident but intentionally to provide better access to the property or in some other fashion enable easier development." Id. ¶ 97. Plaintiff alleges that this finding cannot be sustained because "***all*** of the evidence . . . was to the contrary." Id.

According to plaintiff, the revocation of existing building permits and a five-year moratorium on new permits means that any future development of the Properties would have to comply with the City's new hillside ordinance. Id. ¶ 98. The new hillside ordnance does not allow for the design and size of the homes that plaintiff planned for the

---

[3] The City's Urban Forestry Division is a division within the Bureau of Street Services. Compl. ¶ 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

Properties. <u>Id.</u> Therefore, the revocation and suspension of plaintiff's building permits eviscerates its planned project. <u>Id.</u>

On April 12, 2016, plaintiff timely appealed the Bureau determination to the Board of Public Works. In advance of the hearing on plaintiff's appeal, Lorenzen prepared a staff report recommending that the Board deny plaintiff's appeal. <u>Id.</u> ¶ 102.

On June 24, 2016, the Board heard plaintiff's appeal and voted to uphold the determination. <u>Id.</u> ¶ 104. James, president of the Board, presided over the hearing and made the motion to deny the appeal. <u>Id.</u> ¶¶ 101, 105. Plaintiff alleges that James was biased against plaintiff and plaintiff's project and had pre-committed to ensure that the appeal was denied. <u>Id.</u> ¶ 101. According to plaintiff, James was "politically motivated to clear the name of the Department that had issued the tree permit in the first place[.]" <u>Id.</u> In addition, James and other members of Department staff failed to disclose their "*ex parte* communications." <u>Id.</u> ¶ 104.

As a result of the hearings before the Bureau and the Board, plaintiff's building permits have been revoked and the City refuses to issue any new permits for the Properties and will not do so for five years from the date of the City's determination. <u>Id.</u> ¶ 106. The City has recorded its determination against the Properties. <u>Id.</u>

**B.     Proceedings in State Court**

Plaintiff's factual allegations in the state court mandamus action are virtually identical to its allegations in this action. (Compare dkt. 96, RJN, Exh. A ¶¶ 14-108 to FAC ¶¶ 10-106). As relevant here, plaintiff's first cause of action in state court alleged that "[t]he City failed to provide a fair hearing prior to the revocation of the [p]ermits." Dkt. 96, RJN, Exh. A ¶ 115. Although administrative mandamus proceedings are generally limited to the administrative record, plaintiff sought additional discovery before the Superior Court. Dkt. 96, RJN, Exh. C at 22. While the Superior Court denied most of plaintiff's discovery requests, it permitted certain additional discovery. <u>Id.</u> This included limited depositions of James and Lorenzen involving questions on specific emails. <u>Id.</u> Excerpts of the deposition transcripts were admitted into the record. <u>Id.</u> The Superior Court additionally granted plaintiff's request to augment the record with seven email chains (totaling twelve pages) that the Superior Court concluded could be relevant to plaintiff's claims of bias. <u>Id.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                     **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|----------|--------------------------|------|--------------------|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

On August 12, 2019, following briefing and a bench trial, the Superior Court issued an order finding that plaintiff had demonstrated an unacceptable probability of actual bias and granting plaintiff's first cause of action. Id. at 26. On appeal, the appeals court reversed, holding in a lengthy order that plaintiff had failed to show that the hearing was unfair on account of the decisionmakers being biased. Id. at 29. Specifically, the appeals court considered plaintiff's allegation that Lorenzen and James were personally embroiled in the dispute and concluded that "neither Lorenzen nor James held a financial stake, harbored personal animosity, or held any other personal interest in the project." Id. at 35. Further, the appeals court concluded that the statements made by Lorenzen and James at the hearings and in emails were insufficient evidence that they had precommitted to a result. Id. 36-38. Finally, the appeals court concluded that "the overlapping administrative roles inhabited by Lorenzen and James were permissible and that Sullivan failed to produce evidence of bias arising from those roles." Id. at 38. In accordance with these findings, the appeals court concluded that plaintiff had failed to present evidence of a constitutionally unacceptable risk of bias. Id. at 41. The appeals court reversed the Superior Court's decision on the first cause of action and did not remand for further litigation on the issue of fairness.

Following the decision on appeal, the Superior Court set a writ trial date to hear the remaining issue of whether there were sufficient findings and substantial evidence to support the administrative findings. Dkt. 96, RJN, Exh. D. And, on April 10, 2023, the Superior Court issued a final order ruling against plaintiff and denying the petition. Id.

## III.   LEGAL STANDARD

A motion for judgment on the pleadings brought pursuant to Fed. R. Civ. P. 12(c) provides a means of disposing of cases when all material allegations of fact are admitted in the pleadings and only questions of law remain. See McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir. 1996). Such a motion may be brought "after the pleadings are closed–but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012). Accordingly, while the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a Rule 12(c) motion, as with a 12(b)(6) motion, the district court must view the facts presented in the pleadings and the inferences to be drawn from them in the light most favorable to the nonmoving party. NL Indus. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); In re Century 21-Re/Max Real Estate Adver. Claims Litig., 882 F. Supp. 915, 921 (C.D. Cal. 1994). However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. For purposes of a Rule 12(c) motion, the moving party concedes the accuracy of the factual allegations of the complaint, but does not admit other assertions that constitute conclusions of law or matters that would not be admissible in evidence at trial. 5C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1368 (3d ed. 2004).

Unless a court converts a Rule 12(b)(6) or 12(c) motion into a motion for summary judgment, a court generally cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

## IV.    DISCUSSION

### A.    Preclusion of Plaintiff's First Claim for Relief

The City argues that the state court's resolution of plaintiff's first cause of action precludes plaintiff from litigating its first claim for relief in this action, pursuant to the doctrines of claim preclusion and issue preclusion.  Mot. at 21, 26.

Pursuant to 28 U.S.C. § 1738, federal courts must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgment emerged would do so."  Allen v. McCurry, 449 U.S. 90, 96 (1980).  Accordingly, federal courts apply the law of the state in which the prior judgment was entered to determine the preclusive effect on claims in federal court.  Takahashi v. Bd. of Trs. of Livingston Union Sch. Dist., 783 F.2d 848, 850 (9th Cir. 1986).

Claim preclusion, also called res judicata, "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them."  Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 896 (2002).  Claim preclusion has three requirements under California law: (1) the second lawsuit must involve the same "cause of action" as the first lawsuit; (2) the first lawsuit must have resulted in a final judgment on the merits; and (3) the party to be precluded must have been a party, or in privity with a party, to the first lawsuit.  San Diego Police Officers' Ass'n v. Sand Diego City Emples. Ret. Sys., 568 F.3d 725, 734 (9th Cir. 2008).

The doctrine of issue preclusion, also known as collateral estoppel, "precludes relitigation of issues argued and decided in prior proceedings," when six elements are met.  Lucido v. Superior Court., 51 Cal.3d 335, 341(1990).  These elements are: (1) "the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding"; (2) the issue to be precluded "must have been actually litigated in the former proceeding"; (3) the issue to be precluded "must have been necessarily decided in the former proceeding"; (4) "the decision in the former proceeding must be final and on the merits"; (5) "the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding"; and (6) application of issue preclusion must be consistent with the public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation."  Id. at 341–43.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

"Preclusion does not apply where the litigant did not have a 'full and fair opportunity' to litigate the issue in the earlier case." United States Parcel Service, Inc. v. California Public Utilities Com'n, 77 F.3d 1178, 1185 (9th Cir. 1996) (quoting Allen, 449 U.S. at 101).

In its opposition, plaintiff raises several arguments as to why it should not be precluded from litigating its due process claim. See Opp. at 7-17. First, plaintiff contends that preclusion would be improper because it made an England reservation in the state court proceedings. Id. at 7. Second, plaintiff argues that a state mandamus proceeding does not bar a subsequent federal claim pursuant to § 1983. Id. at 14. Third, plaintiff argues that it did not have the opportunity to fully litigate its claim in the state court proceedings. Id. at 11. And finally, plaintiff urges the Court to apply an equity exception in the event that the Court concludes that the elements of claim or issue preclusion are met here. Id. at 16. The Court addresses each of these arguments in turn.

1.     Effect of England Reservation on Claim and Issue Preclusion

Sullivan contends that it cannot be precluded from litigating its claims in federal court because it was forced to litigate in state court and expressly reserved its right to pursue its claims in federal court pursuant to an England reservation. Id. at 7.

Pursuant to England, 375 U.S. 411, "[w]hen [plaintiff] presents his state law claims to the California courts, [it] is free to present [its] federal . . . claim[s] to them as well. If [plaintiff] wishes to retain [its] right to return to federal court for adjudication of [its] federal claim[s], [plaintiff] must make an appropriate reservation in state court." San Remo Hotel v. City and Cnty. of San Francisco, 145 F.3d 1095, 1106 n.7 (9th Cir. 1998) (citation omitted); see England, 375 U.S. at 422 n.12 ("We are confident that state courts, sharing the [Pullman] abstention doctrine's purpose of furthering the harmonious relation between state and federal authority, will respect a litigant's reservation of his federal claims for decision by the federal courts." (citation and quotation marks omitted)).

The Ninth Circuit distinguishes between the effect of an England reservation on claim preclusion on the one hand and issue preclusion on the other. When litigants are forced to litigate in state court pursuant to Pullman, "a proper England reservation may prevent claim preclusion." Los Altos El Granada Investors v. City of Capitola, 583 F.3d 647, 686 n.3 (9th Cir. 2009). See also Los Altos El Granada investors v. City of Capitola, 2010 WL 3835665, at *2 (N.D. Cal. Sept. 29, 2010) ("An England reservation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

is sufficient to avoid the doctrine of claim preclusion.") (citing San Remo Hotel, L.P. v. City and County of San Francisco, 364 F.3d 1088, 1094 (9th Cir. 2004), aff'd 545 U.S. 323 (2005)); Dunex, Inc. v. City of Oceanside, 2010 WL 4537824, at *8 (S.D. Cal. Nov. 2, 2010) ("If [p]laintiffs had made an England reservation in the state action, the judgment in the state action would not have imposed a res judicata bar to [p]laintiffs' federal claims.").

However, "the doctrine of issue preclusion can apply to bar relitigation in federal court of issues necessarily decided in state court, notwithstanding that plaintiffs must litigate in state court pursuant to Pullman." San Remo, 364 F.3d at 1096. This is true even where litigants have reserved federal claims under England. Id. at 1096-98 (concluding that California state court determination on state takings law issues precluded relitigation of "equivalent" federal takings law issues, notwithstanding plaintiff's England reservation). See also Los Altos, 2010 WL 3835665, at *3-5 (finding that England reservation did not prevent doctrine of issue preclusion from barring relitigation of issues decided in state court proceedings in which plaintiff was forced to litigate).

In Dodd v. Hood River Cnty., 136 F.3d 1219 (9th Cir. 1998), the Ninth Circuit considered whether an England reservation could prevent the application of issue preclusion where the Dodds had unsuccessfully pursued a takings claim under Oregon law in Oregon state court and sought to litigate a federal takings claim in federal court. Id. at 1125-28. The court concluded that "the reservation doctrine does not enable them to avoid preclusion of issues actually litigated in the state forum." Id. at 1127. Thus, "[t]o the extent that they fully litigated a necessary issue in the course of the state proceedings that is identical to an issue before the federal court, the Dodds [we]re precluded from taking a second bite at the apple." Id. While the Dodds had not been forced to litigate in state court under Pullman or a similar doctrine, the Ninth Circuit reasoned that a litigant does not have "an unrestricted opportunity to relitigate an issue already decided in state court [where] the issue arose in a state proceeding in which he would rather not have been engaged at all." Id. at 1228 (quoting Allen, 449 U.S. at 104). See also San Remo, 364 F.3d at 1096 (applying Dodd holding where plaintiffs were forced to litigate in state court pursuant to Pullman).

Plaintiff cites Tovar v. Billmeyer, 609 F.2d 1291 (9th Cir. 1980) for the contention that federal courts have an "unflagging obligation" to hear claims for relief pursuant to 42

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

U.S.C. § 1983.  Opp. at 8 (quoting Tovar, 609 F.2d at 1293).  But Tovar does not stand for the rule that § 1983 claims are immune from issue preclusion where equivalent issues were actually decided in a state court proceeding.  Indeed, the Supreme Court has "repeatedly held, to the contrary, that issues actually decided in valid state-court judgments may well deprive plaintiffs of the 'right' to have their federal claims relitigated in federal court." San Remo Hotel, L.P. v. City and Cnty. of San Francisco, 545 U.S. 323, 342 (2005).  "This is so even when the plaintiff would have preferred not to litigate in state court, but was required to do so by statute or prudential rules." Id. And specifically with respect to § 1983 claims, the Supreme Court has rejected the argument that § 1983 evinces Congressional intent "to allow relitigation of federal issues decided after a full and fair hearing in state court." Allen, 449 U.S. at 101.

In short, while plaintiff's England reservation may prevent the application of claim preclusion here, the Court concludes that plaintiff's claims are not immune from the doctrine of issue preclusion to the extent that the same issues were actually litigated in the state court proceedings and the doctrine's requirements are otherwise met.

2.      Preclusive Effect of a State Mandamus Action

Next, plaintiff argues that decisions in state mandamus actions should not have a preclusive effect because they are "special proceedings" and not causes of action.  Opp. at 14.  In support of this argument, plaintiff quotes a Ninth Circuit case, Honey v. Distelrath, 195 F.3d 531 (9th Cir. 1999), which, relying on a California Court of Appeal decision, Mata v. City of Los Angeles, 20 Cal. App. 4th 141 (1993), finds that a mandamus action is a special proceeding and does not bar a subsequent § 1983 claim. According to plaintiff, Honey and Mata provide an additional ground on which to bar preclusion here.  Opp. at 14-16.

In its reply, the City points out that since Honey and Mata were decided, both the Ninth Circuit and the California Court of Appeal have clarified that state mandamus actions may serve as the basis of claim or issue preclusion.  Specifically, in Federation of Hillside & Canyon Assns. v. City of Los Angeles, 126 Cal. App. 4th 1180 (2004), the California Court of Appeal explained that Mata distinguished special proceedings for the purpose of showing that the causes of action at issue were not the same, not to hold that special proceedings cannot have a preclusive effect. Id. at 1205.  The Federation court further stated, "[w]e see no reason to distinguish between actions and special proceedings

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

. . . for the purposes of res judicata if the requirements of the doctrine are satisfied and if the issues asserted in the later proceeding could have been asserted in the prior proceeding." Id.  In so concluding, the court cited California Supreme Court cases finding that the doctrine of issue preclusion could apply to judgments on the merits in mandamus proceedings.  Id. (citing Hollywood Circle, Inc. v. Dep't of Alcohol Beverage Control, 55 Cal. 2d 728, 733 (1961); Caminetti v. Bd. of Trustees, 1 Cal. 2d 354, 356 (1934).  In light of these precedents, its analysis of Mata, and the purposes of the preclusion doctrines, the Federation court concluded that state mandamus actions may give rise to both claim preclusion and issue preclusion.  Federation, 126 Cal. App. 4th at 1205.

In Manufactured Home Communities, Inc. v. City of San Jose, 420 F.3d 1022 (9th Cir. 2005), the Ninth Circuit rejected the argument that a state mandamus proceeding cannot have a preclusive effect under Mata.  Id. at 1031 n.12.  Relying on Federation and Hollywood Circle, the court found that this argument "misrepresents California law" and concluded that "[a] mandamus action may . . . preclude further litigation."  Id. Accordingly, following Federation and Manufactured Home, courts in the Ninth Circuit have found that final judgments in state mandamus proceedings can preclude relitigation of claims and issues in federal court.  See Naranjo v. Cnty. of Los Angeles, 2016 WL 11755022, at *6 (C.D. Cal. Nov. 14, 2016) (applying doctrine of claim preclusion to bar plaintiff from litigating claims in federal court that were raised or could have been raised in state mandamus proceeding); Stokes v. City of Visalia, 2018 WL 2970765, at *12 (E.D. Cal. June 8, 2018) (same).

Based on the foregoing, the Court finds plaintiff's argument and reliance on Honey to be unpersuasive.  The fact that the prior judgment arose in a state mandamus proceeding, by itself, is not sufficient to bar the application of issue preclusion here.

   3.  Application of the Doctrine of Issue Preclusion

Having concluded that neither the England reservation nor the fact that the prior judgment was issued in a state mandamus proceeding bars the application of issue preclusion here, the Court next considers whether the requirements for issue preclusion under California law are met.  For plaintiff to be estopped from relitigating issues, six elements must be met: (1) "the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding"; (2) the issue to be precluded "must

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | | Date | September 15, 2023 |
|---|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | | |

have been actually litigated in the former proceeding"; (3) the issue to be precluded "must have been necessarily decided in the former proceeding"; (4) "the decision in the former proceeding must be final and on the merits"; (5) "the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding"; and (6) application of issue preclusion must be consistent with the public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." Lucido, 51 Cal. 3d at 341–43.

        *a.* *Whether the State Court Necessarily Decided the Same Issue in a Final Judgment*

In the present action, plaintiff's first claim for relief for a violation of due process states as follows:

111. The Due Process Clause of the Fourteenth Amendment guarantees parties a fair trial before a fair tribunal, whether it be an administrative agency or a court. A plaintiff establishes a claim of bias violating due process requirements where it shows actual bias on the part of decisionmakers or the "appearance of partiality". The test of the ability of the administrative body to act is whether in light of the particular facts experience teaches that the probability of actual bias on the part of the decisionmaker is too high to be constitutionally tolerable. Thus, due process is violated where the decision maker is actually biased against a party, is personally embroiled in the controversy to be decided or has pre-committed to decide the matter in a particular way. Likewise, it is a fundamental rule of due process that no employee involved in investigating or prosecuting a case may participate as an adjudicator. The fair hearing to which a person is entitled must be before an arbiter that has not participated in staff decisions.

112. Ron Lorenzen and Kevin James were biased against Plaintiff, Plaintiff's Property and the Project. They had conducted and led the investigation of the matter prior to presiding over the only two quasi-judicial hearings afforded Plaintiff prior to the deprivation of its property rights in the Properties and Permits. Each had precommitted to deciding the matter against Plaintiff. Each was personally embroiled in the controversy. Their participation in the City hearings rendered the proceedings a sham and the results preordained.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

113. The Scorched Earth Ordinance is unconstitutional on its face and as applied to Plaintiff given the lack of procedural due process.

114. Plaintiff has substantive due process rights to be free from arbitrary and capricious government conduct. A deliberate flouting of the law that trammels significant personal or property rights violates substantive due process and is actionable under the Fourteenth Amendment and Section 1983.

115. The City deliberately flouted the law and trammeled Plaintiff's property rights in the Properties and Permits by failing to provide Plaintiff with a fair hearing before a neutral arbiter, by revoking permits for a property on which no unpermitted protected trees were removed in plain violation of the LAMC, by revoking grading permits also in plain violation of the LAMC and recording documents against the Properties invoking penalties the City was not authorized to impose thereby slandering Plaintiff's title.

FAC ¶¶ 111-115.

The foregoing allegations indicate that plaintiff's due process claim is based on its contention that the administrative hearing process was unfair due to the decisionmakers' bias against plaintiff. Plaintiff specifically alleges that the decisionmakers were biased because they were personally embroiled in the dispute, precommitted to decide the matter in a particular way, and both investigated and presided over the dispute.

It is clear from the state court record, and plaintiff does not appear to dispute, that the fairness issue is the same issue addressed and ruled on in the state court proceedings. Indeed, plaintiff raised the fair hearing issue in its May 12, 2017 state court petition. See dkt. 96, RJN, Exh. A ¶ 115 ("The City failed to provide a fair hearing prior to the revocation of the [p]ermits[.]"). Plaintiff then engaged in discovery on the fairness issue and litigated the issue in a bench trial with briefing and oral argument on May 14, 2019. Dkt. 96, RJN, Exh. B at 1. On August 12, 2019, the Superior Court ruled on plaintiff's first cause of action for an administrative writ, alleging that the administrative hearing process was unfair. Id. The August 12, 2019 order engaged in a thorough analysis of plaintiff's bias claims, concluding that plaintiff had presented sufficient evidence to show an improper probability of bias. Id. On appeal, following briefing and oral argument, the appeals court reversed and concluded that plaintiff failed to present sufficient evidence to demonstrate a constitutionally unacceptable risk of bias. Dkt. 96, RJN, Exh. C at 41.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

Both courts specifically decided the issues of personal embroilment, precommitment to a result, and overlapping roles.  Id. at 29-41.  And the appeals court decision, which was the final decision on the fairness issue, concluded that plaintiff had failed to present sufficient evidence on these issues.  Id.

Accordingly, the Court finds that the first, third, and fourth elements are met.  The issues sought to be relitigated are identical to those raised in the state mandamus proceedings, and these issues were necessarily decided in a final decision on the merits.

In its opposition, plaintiff contends that no court has ruled on plaintiff's claim that the ordinance at issue is "unconstitutional on its face and as applied to [p]laintiff given the lack of procedural due process."  Opp. at 17; FAC ¶ 113.  It appears to the Court that the "as applied" due process issue is the same as the fairness issue addressed in the state mandamus proceedings, in light of the fact that plaintiff's allegations of a due process violation exclusively relate to the alleged unfairness of the hearing.  See FAC ¶¶ 111-115.  Furthermore, to the extent that the state court addressed and rejected the as applied challenge, it necessarily rejected a facial challenge as well, given that "[a] facial challenge is really just a claim that the law or policy at issue is unconstitutional in all of its applications."  Bucklew v. Precythe, 139 S. Ct. 1112, 1127 (2019).  That is, a finding that the ordinance was constitutional as applied implicitly requires a conclusion that the ordinance was constitutional on its face.

> b. *Whether plaintiff had a full and fair opportunity to actually litigate the issue*

With respect to the second element, the requirement that the issue was actually litigated in the former proceeding, plaintiff argues at length that it did not have the opportunity to "freely and fully" present its case in the state mandamus action.  Opp. at 11-14.  Plaintiff points out that the state mandamus proceeding was based on the administrative record, most of plaintiff's discovery requests were denied, plaintiff was prevented from putting on live testimony or cross-examining witnesses, and plaintiff did not receive a jury trial.  Id.  In short, according to plaintiff, because of the procedural limitations inherent in a state mandamus proceeding, it was denied the opportunity to present all of the evidence in support of his first cause of action.  Thus, plaintiff contends, the appeals court's finding that the evidence before it was insufficient to demonstrate that the administrative hearings were unfair should not preclude relitigation of this issue in federal court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

It is well settled that the doctrine of issue preclusion does not apply when a litigant did not have a "full and fair opportunity" to litigate the issue in the prior proceeding. Allen, 449 U.S. at 95. "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation. Montana v. United States, 440 U.S. 147, 164 n.11 (1979). The Supreme Court has held that the relevant question for determining whether a party had a full and fair opportunity to litigate is whether the prior proceeding "satisf[ied] the applicable requirements of the [Fourteenth Amendment's] Due Process Clause." Kremer v. Chemical Const. Corp., 456 U.S. 461, 482 (1982). "A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment." Id. "[N]o single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause." Id. at 483. However, the fundamental requirements of procedural due process are notice and opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

Here, plaintiff first presented testimony and evidence, including regarding allegations of bias, at public hearings before the Board and the Bureau. Plaintiff then had the opportunity to fully brief and argue its writ of mandamus claims before the state Superior Court in a bench trial on the merits and to litigate the City's appeal before the appeals court through briefing and oral argument. While the kinds of claims plaintiff brought in the state mandamus proceedings are normally reviewed based solely on the administrative record, the Superior Court granted plaintiff the opportunity to conduct limited discovery, including taking depositions of Lorenzen and James, and to augment the administrative record with email chains and excerpts from the deposition transcripts, after concluding that that evidence could be relevant to plaintiff's claims of bias.

Furthermore, while the Superior Court denied a number of plaintiff's requests to do additional discovery and to enter specific evidence into the record, it did so after considering plaintiff's arguments and the propriety of augmenting the record with the evidence that plaintiff proffered. Indeed, plaintiff's requests to conduct additional discovery were the subject of five motions to compel and three hearings before the Superior Court. Plaintiff additionally raised its requests to augment the administrative record before the appeals court, which concluded that plaintiff failed to make a showing that the Superior Court erred by denying plaintiff's discovery requests. Dkt. 96, RJN,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|----------|--------------------------|------|--------------------|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

Exh. C at 22-23 n.12. Further, the appeals court determined that it should not consider evidence outside of the record which plaintiff cited in its brief on appeal. Id. Thus, plaintiff's unsuccessful requests to obtain additional evidence and to augment the record were considered and denied based on the information before the Superior Court and the appeals court.

The state court record reveals that both the Superior Court and the appeals court carefully considered plaintiff's arguments and evidence of bias—including with respect to personal embroilment, precommitment to a result, and overlapping roles—and issued lengthy written decisions on the same. Based on the evidence in the augmented record, the Superior Court concluded that plaintiff had set forth sufficient evidence of bias rendering the administrative hearings unfair. The appeals court, in turn, considered the same evidence and concluded that it was insufficient to support a finding of unfairness. Rather than remanding for consideration of additional evidence and further litigation on the question of unfairness, the appeals court simply reversed the Superior Court's decision, implicitly finding that consideration of additional evidence was not necessary to uphold the fairness of the hearings.

This extensive process does not support a finding that the state court proceedings resulted in a "constitutionally infirm judgment." Kremer, 456 U.S. at 482. Plaintiff had the opportunity to fully brief its claims, present evidence, including evidence outside of the original administrative record, present oral argument at a bench trial, and to argue the bias issues on appeal. Plaintiff's argument that the limited discovery and inability to put on live testimony and cross-examine witnesses—ordinary characteristics of state mandamus proceedings—denied it a full and fair opportunity to present its claims is contrary to the general rule that state mandamus judgments can have a preclusive effect. Clark v. Yosemite Cmty. Coll. Dist., 785 F.2d 781, 784 n.1 (9th Cir. 1986) ("[I]t is well established in California that the doctrine of res judicata applies to judgments in mandamus proceedings."). Additionally, the fact that the Superior Court found, based on the evidence in the record, that plaintiff had demonstrated that the hearings were unfair further undermines plaintiff's argument that its ability to present evidence was so restricted that it was denied a full and fair opportunity to litigate its claim.

Nonetheless, following the Court's hearing on July 31, 2023, the Court invited plaintiff to submit a supplemental brief addressing how the exclusion of specific evidence by the state trial court is claimed to have prevented plaintiff from having a full and fair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | | Date | September 15, 2023 |
|---|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | | |

opportunity to litigate its due process claim.  Plaintiff responded with examples of evidence that it would have offered to prove that "the administrative hearings were unfair, improper, and presided over by biased hearing officers who had pre-committed to a result." Dkt. 103 at 6.  Plaintiff further explained that it had sought additional discovery to prove that there was a conspiracy among certain City officials to deprive plaintiff of a fair hearing, but its discovery requests were repeatedly denied.  Id. at 6-7.  In the event the Court granted the City's motion for judgment on the pleadings, plaintiff requested leave to amend.  Id. at 9.  Plaintiff proffered that if leave to amend were granted, it would argue that the state court's exclusion of evidence and denial of discovery deprived it of the opportunity to fully and fairly litigate its due process claim.  Id.

Plaintiff asserted that it is significant that the state court admitted only 7 of the 209 documents that plaintiff had sought to add to the record.  Id. at 2.  However, it does not appear that the three examples proffered by plaintiff as indicative of the excluded documents differ substantially from the evidence that was before the state court.  And plaintiff has failed to explain how the denial of certain of its discovery requests prevented it from fully litigating its claim.  On the contrary, the state court record indicates that consideration of additional evidence was not necessary to decide the fairness issue.  The relevant question is not whether the state court permitted plaintiff to present all possible evidence in favor of its claims; rather, the Court must inquire whether the state court proceedings "satisf[ied] the applicable requirements of the Due Process Clause." Kremer, 456 U.S. at 482.  Plaintiff has not shown that the state court proceedings failed to meet this standard.

The Court thus grants the City's motion for judgment on the pleadings, with leave to amend.  Plaintiff should respond to the appeals court's conclusion that plaintiff "failed to present 'specific evidence demonstrating actual bias or a particular combination of circumstances creating an unacceptable risk of bias' that would meet the standard of the exceptional case involving a constitutionally unacceptable risk of bias." Dkt. 96, RJN, Exh. C (citation omitted).  Specifically, plaintiff should allege with reasonable particularity the factual basis for its claim that the decisionmakers' personal embroilment, precommitment to a result, and overlapping roles resulted in an unfair administrative hearing.  Accordingly, the Court grants the City's motion for judgment on the pleadings,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

with thirty days' leave to amend for plaintiff to address the concerns raised in the appeals court decision.

### c. Remaining Issue Preclusion Elements

The remaining elements additionally weigh in favor of the City. It is undisputed that plaintiff, the party to be estopped from relitigating issues, was a party in the prior proceedings. As for the sixth element, application of issue preclusion here would preserve the integrity of the judicial system and promote judicial economy by avoiding relitigating of issues already decided in state court. The Court therefore concludes that the elements of issue preclusion are met and that plaintiff shall be estopped from relitigating the question of whether the administrative hearings were unfair due to bias.

### 4.    Equity Exception

Finally, plaintiff argues that, even if the Court finds the elements of preclusion to be met, it should apply an equity exception and allow plaintiff to relitigate issues decided in the state court proceedings. Opp. at 16. In support of this contention, plaintiff argues that it was forced into state court against its will pursuant to Pullman and was not able to freely and fully litigate its claims in the state mandamus proceedings. Plaintiff cites Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n, 60 Cal. App. 4th 1053, 1065 (1998) for the rule that "res judicata will not be applied if injustice would result or if the public interest requires that relitigation not be foreclosed" (internal quotation marks omitted). But plaintiff has failed to show that application of issue preclusion here would result in injustice or harm the public interest. As addressed above, an England reservation does not foreclose application of issue preclusion "even when the plaintiff would have preferred not to litigate in state court." San Remo, 545 U.S. at 342. And plaintiff has not shown that the state mandamus proceedings were so limited that it was denied a full and fair opportunity to present its claims.

Accordingly, the Court concludes that application of an equity exception is not appropriate. Because plaintiff's due process claim appears to be based entirely on the alleged unfairness of the administrative hearings and plaintiff is precluded from relitigating this unfairness issue, the Court finds that the City's motion for judgment on the pleadings on plaintiff's first claim for relief should be granted, with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

### B.    Declaratory Relief

Plaintiff seeks declaratory relief as to six issues: "that (1) the Scorched Earth Ordinance is unconstitutional in its face and as applied to Plaintiff; (2) Plaintiff was denied a fair hearing; (3) application of the Scorched Earth Ordinance effects a taking of property without the payment of just compensation in violation of the United States and California Constitutions; (4) the revocation of the permits in respect to a non-offending property and the revocation of the grading permits effects a taking of the Properties without the payment of just compensation in violation of the United States and California Constitutions; (5) Plaintiff is entitled to the immediate reinstatement of the Permits; and (6) Plaintiff has vested rights to complete the Project and develop its Property under the terms of the Permits."  FAC ¶ 126.

The City first contends that the declaratory relief claim is moot because a legitimate claim for declaratory relief seeks prospective relief regarding a live controversy and plaintiff simply seeks a declaration that the City wrongly revoked its permits.  Mot. at 29.  Plaintiff responds that the FAC seeks prospective relief in the form of a declaration that the Scorched Earth Ordinance is unconstitutional on its face and as applied to plaintiff.  Opp. at 9.  The City counters that "[b]oth the facial and as-applied challenges to the [ordinance] on due process grounds have essentially been determined because the state court's ruling upholding the City's actions in applying the [ordinance] to [plaintiff] necessarily upholds the fairness of the procedures outlined in the [ordinance] as well."  Reply at 16.

The City additionally argues that plaintiff's request for declaratory relief based on a takings violation fail as a matter of law because the enforcement of penalty provisions does not constitute a regulatory taking.  Mot. at 30.  Plaintiff responds that this rule only applies to lawfully imposed penalties.  Opp. at 18.  According to plaintiff, because its permits were revoked in violation of its due process rights, the fact that the revocation constituted enforcement of a penalty does not preclude a takings claim.  Id.

 Generally, "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."  Bennis v. Michigan, 516 U.S. 442, 453 (1996).  Thus, "an enforcement action that results in the seizure of property cannot be challenged as a taking."  Johnson v. United States, 49 Fed. Cl. 648, 649 (2001).  See

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

also <u>Miranda v. Bonner</u>, 2013 WL 794059, at *10 (C.D. Cal. Mar. 4, 2013) (concluding that a lawful forfeiture cannot give rise to a taking "as it would be an 'exercise of governmental authority other than the power of eminent domain'") (quoting <u>Bennis</u>, 516 U.S. at 442); <u>Mateos-Sandoval v. Cnty. of Sonoma</u>, 942 F. Supp. 2d 890, 912 (N.D. Cal. 2013) ("If . . . [p]laintiffs ultimately fail to prove their Fourth Amendment claim, their takings clause claim would also fail because [d]efendants acquired their [property] 'under the exercise of governmental authority other than the power of eminent domain.'") (quoting <u>Bennis</u>, 516 U.S. at 442).

Here, the City revoked plaintiff's permits as a penalty, pursuant to LAMC § 46.06, which allows for the revocation of existing permits when a protected tree is removed or revoked without a permit. It is undisputed that plaintiff improperly removed three protected trees from the property at issue, and, as concluded above, plaintiff has failed to show that the revocation of its permits violated its right to due process. Accordingly, the revocation of plaintiff's permits occurred through lawful government action, and plaintiff cannot now argue that it has a right to be compensated for a measure meant to penalize it. <u>See</u> <u>Bennis</u>, 516 U.S. at 442.

Plaintiff cites to a recent Supreme Court decision, <u>Tyler v. Hennepin Cnty</u>, 143 S. Ct. 1369 (2023) for the contention that an otherwise lawful forfeiture may give rise to a takings claim. Opp. at 18-19. <u>Tyler</u> addressed a Minnesota statute, which permitted the state to sell the property of a delinquent taxpayer and to keep any proceeds in excess of the tax debt. <u>Tyler</u>, 143 S. Ct. at 1373. Plaintiff Tyler filed a federal takings claim for relief after her property was sold pursuant to the state law. <u>Id.</u> at 1374. The district court dismissed for failure to state a claim, and the Eighth Circuit affirmed. <u>Id.</u> The Supreme Court reversed, finding that Tyler had stated a takings claim and was entitled to just compensation. <u>Id.</u> at 1376.

The Court does not read <u>Tyler</u> to disturb the general rule that the lawful imposition of a penalty does not give rise to a takings claim. The <u>Tyler</u> decision is based on "[t]he principle that a government may not take more from a taxpayer than she owes." <u>Id.</u> at 1376. Thus, the Minnesota statute impermissibly penalized Tyler for failing to pay her taxes by withholding the proceeds in excess of her tax debt. This is clearly distinct from the present action, in which plaintiff's permits were revoked pursuant to a lawful exercise of the state's police power to penalize plaintiff for impermissibly removing protected trees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07148-CAS (AGRx) | Date | September 15, 2023 |
|---|---|---|---|
| Title | SULLIVAN EQUITY PARTNERS, LLC V. CITY OF LOS ANGELES, ET AL. | | |

The Court thus concludes that plaintiff's claim for declaratory relief that the revocation of permits violated the Takings Clause fail as a matter of law. Because none of the constitutional grounds raised in plaintiff's declaratory relief claim pass muster, there is no basis for finding that plaintiff's permits must be reinstated. Accordingly, the City's motion for judgment on the pleadings on plaintiff's declaratory relief claim is granted.

####        C.    Request to Amend FAC to Reallege Inverse Condemnation Claim

Plaintiff seeks leave to amend the FAC to reallege an inverse condemnation claim. Opp. at 19. Plaintiff cites the Court's prior order dismissing the claim as unripe and stating that "[a]fter a final decision is reached that clarifies the extent of the regulatory burden on Sullivan's rights, if any, the Court will entertain a motion for leave to file a further amendment." Dkt. 54.

While, as a general rule, leave to amend should be freely granted, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986), or amendment would be otherwise futile, Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004). Having concluded that the enforcement of the ordinance against plaintiff cannot give rise to a takings claim here as a matter of law, the Court finds that amending the FAC to reallege an inverse condemnation claim would be futile. Accordingly, the Court denies plaintiff's request.

#### V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the City's motion for judgment on the pleadings, with thirty days' leave to amend to address the issue of whether plaintiff had a full and fair opportunity to litigate its claims in state court.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |